HENRY C. ROUSE, *as Receiver, etc.*, v. F. C. HARRY.

1. RAILROAD EMPLOYEE, *Injured — Liability of Receiver.* The liability of a receiver operating a railroad to an employee who is injured in the service through the negligence of a coemployee, is determined by the same rules of law as the liability of the company would be, and ¶ 1251 of the General Statutes of 1889 applies.

2. NEGLIGENCE *of Coemployee — Negligence of Plaintiff — Instructions.* Where the jury in answer to special questions find that the plaintiff was free from any negligence contributing to the injury for which he sues, and that such injury resulted from the culpable negligence of a coemployee, the mere reference by the court to the abstract rule that if the negligence of the plaintiff is only slight, or remotely contributory to the injury, if otherwise entitled to he may still recover, cannot be held prejudicial because not applicable to the facts, especially where the court instructs the jury fully and properly on the law applicable to the facts as presented by the evidence.

3. VERDICT, *Supported.* The testimony examined, and found sufficient to support the verdict.

*Error from Neosho District Court.*

F. O. HARRY, the plaintiff below, was a brakeman employed by the receivers of the Missouri, Kansas & Texas Railway Company on the line of road running from Coffeyville to Paola. On the 7th of December, 1889, his left arm was caught and crushed while he was attempting to couple two freight-cars at Coffeyville. This action was brought to recover compensation for the injury, and resulted in a verdict in his favor for $5,000. The train on which the plaintiff was working arrived in Coffeyville from Paola after dark, and the same crew made up the train going back north, Coffeyville then being the end of the line. The plaintiff was hind brakeman and Charles Canaga was front brakeman. The main line of the railroad runs on the east side of the depot, and what is termed the "house-track" on the west side. The switch from

the main line to the house-track is located about 100 yards north from the depot. When the train first pulled into Coffeyville on that night, the head brakeman cut the engine off and turned the switch after the engine had passed so that the freight-cars and caboose ran in on the house-track while the engine ran on down by the depot. The engine was then run back up the track, coupled on the rear end of the caboose, which was pulled out upon the main track and run down past the depot. The engine was then taken to the round-house, where there is a turntable, and turned around preparatory to making the return trip. The engine was then brought back and an Armour Bros.' refriger-ator-car loaded with wheat was dropped down to the caboose. Two cars were then set on the house-track for loading. Instructions were given by the conductor to the plaintiff with reference to making up the train, and he had charge of the switching, the conductor being engaged at the depot. The plaintiff testified that he told Canaga to cut off behind the front box car and come out on the main line and back down on the train, and he would couple them up. Plaintiff then walked across from the house-track to the main line. The night was very dark, and he had a lantern in his hand. The grade descended from the switch-stand southward. Instead of obeying the instructions of the plaintiff, Canaga cut the car loose from the en-gine and "kicked" it down unattended. The plain-took his position next the refrigerator-car to make the coupling. As he saw the car approaching he gave the proper signals with his lantern to slow up. Hold-ing his lantern in his right hand he made the coup-ling with his left, but, owing to the rapid rate at which the car was coming, his arm was caught and badly crushed. The negligence charged in the peti-

tion is that Canaga carelessly allowed the car to run at a dangerous rate of speed down against the car to which it was to be coupled, and that the defendant negligently used cars with cast-iron extension dead-woods projecting from the ends of the cars on either side of the draw-heads, rendering it unnecessarily dangerous to make couplings. In addition to rendering a general verdict, the jury also, at the request of the plaintiff, returned answers to special questions, among which are the following :

"5. Was not said Canaga at the time of the injury an inexperienced, careless, extra brakeman, and did not defendants know that fact? A. Yes."

"7. Do you not believe and find that Canaga, from inexperience and lack of practice as a front brakeman, and from negligence, cut the car loose and permitted it to run violently down grade to the car where plaintiff was to make the coupling? A. Yes."

"12. Was not plaintiff, Harry, using ordinary care and prudence in trying to make the coupling at the time of his injury? A. Yes.

"13. Do you not find that Mr. Harry was an experienced, careful and prudent brakeman? A. Yes.

"14. Was Mr. Harry guilty of any negligence which, directly or proximately, contributed to his injury? A. No."

Special questions were also submitted on the part of the defendant, among which are the following :

"12. Could not the plaintiff, by the exercise of his sight and hearing, have informed himself as to the speed at which the car was approaching? A. He could not."

"19. Was it not the duty of Charley Canaga, the front brakeman, to remain with the front end of the train after cutting off and kicking down the last car on the main line? A. No ; having cut the car loose and kicked it with the force shown, owing to the darkness, he should have ridden the car down."

"27. Was plaintiff's injury caused to some extent by his own want of attention? A. No.

"28. Was plaintiff's injury caused partly by his own want of attention and partly by the speed of the approaching car? A. It was caused by the speed of the approaching car in the darkness."

Judgment was rendered on the verdict for the plaintiff, and the defendant has brought the case to this court.

*T. N. Sedgwick*, for plaintiff in error.

*C. A. Cox*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : The first claim of error is in admitting testimony to prove that the refrigerator-cars were constructed with dead-woods which rendered it more dangerous for brakemen to make couplings than ordinary cars. It is said that the defendants were not bound to furnish any particular kind of cars, and the plaintiff, knowing the construction of the cars, assumed the extra hazard. After hearing the testimony on this point, the court instructed the jury that the plaintiff had assumed this risk. It is contended, however, that notwithstanding this instruction, the jury were prejudiced by the evidence, and led to believe that such cars were unnecessarily dangerous, and that the court should not have permitted the jury to hear such testimony at all. We are unable to perceive how the court could have ruled that the plaintiff had assumed the extra hazard until such facts were developed by the evidence, as showed the assumption by the plaintiff of this particular hazard.

It is next contended that the accident was occasioned by the plaintiff's own negligence ; that he did not im-

mediately after the injury attribute any fault to Can-
aga; that it was not the duty of Canaga to ride the
car down, but to stay with the engine; that there was,
in fact, other switching to do, rendering it necessary
for him to accompany the engine. It is very clear to
our minds that there is ample testimony to sustain
the findings of the jury as well on the question of the
negligence of Canaga as on that of contributory negli-
gence on the part of the plaintiff. The jury have
answered clearly and unequivocally that Canaga was
negligent in allowing the car to run down grade to
where the plaintiff was to make the coupling unat-
tended by anyone in a position to answer signals or
check its speed. They have also found that the plain-
tiff could not by the use of his senses determine the
rate of speed at which the car was approaching in the
darkness; that the plaintiff was free from fault or
negligence, and that the injury was occasioned by the
negligence of Canaga. The testimony is ample to
support these findings, and we find nothing in the
record requiring us to interfere with them.

Complaint is made of the eleventh instruction, by
which the jury were told that if the plaintiff's negli-
gence was only slight, or the remote cause of the
injury, he might recover if otherwise entitled to a
verdict. Under some circumstances such an instruc-
tion is misleading. We have held it to be so in the
case of *C. K. & W. Rld. Co. v. Prouty,* ante, p. 503,
decided at this term of the court. It is true, if the
plaintiff was negligent in attempting to make the
coupling as he did, such negligence was proximate
and not remote; but we have no difficulty to contend
with in this case on that point, for the jury have ex-
pressly found that he was not negligent at all, and
that he could not have ascertained, by the use of his

38—55 KAS.

senses, the rate of speed at which the car was approaching, and that he used all reasonable and necessary care in making the coupling. The instruction complained of would also appear more objectionable standing alone than it does in connection with the very full and clear instructions accompanying it, by which the attention of the jury was called to the specific claims of negligence, and fairly explaining to them the questions of fact presented by the evidence which they were called on to decide. They have found the plaintiff free from any negligence contributing to the injury. We, therefore, have no question presented to us as to the effect on the plaintiff's right of recovery of slight or remote negligence on his part, for he was guilty of none.

**2. Negligence of coemployee— negligence of plaintiff— instructions.**

The seventh instruction is also criticized, but we find no fault in it.

We now proceed to consider the most important question presented by the record in this case, namely, whether ¶ 1251 of the General Statutes of 1889, applies as well to receivers operating railroads as to railroad companies. The section reads :

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees to any person sustaining such damage."

The trial court charged the jury that this section did apply in this case. It is contended with great earnestness, on behalf of the plaintiff in error, that this section of the statute does not in terms apply to receivers ; that it gives a cause of action where none existed at common law ; that such a statute must be

strictly construed; that it cannot be extended to embrace parties not included within its terms; that receivers are not railroad companies but officers of the court, and cannot be held liable for injuries received by one employee through the negligence of another. The argument in support of this contention by the learned counsel for the plaintiff in error is clear and forcible and presents in all its strength as it appears to us that side of the question, and his position is sustained by decisions of the supreme courts of Georgia and Texas under very similar statutes.

It is contended that to include receivers is to interpolate by judicial legislation that which the legislature has omitted from the statute. Many authorities are cited denying to the court any such power. It is also urged that this court, in the case of *Beeson v. Busenbark*, 44 Kas. 669, has practically decided this question in accordance with that view. That was an action against Beeson & Selden, who were contractors engaged in the construction of a railroad. They used engines and cars for the transportation of materials and other purposes connected with the construction of the road, and the plaintiff in that case was injured while employed in cleaning the ash-box of an engine. The defendants were not a corporation, but a firm composed of private persons, and were not engaged in the operation of a railroad as common carriers, and it was held that they did not fall within the statute. We are entirely satisfied of the correctness of the decision in that case. The distinction between contractors employed in the construction of a railroad, or of some portion of a road, and a railroad company operating under a charter from the state as common carriers of freight and passengers is broad and well marked. The position of a receiver, however, is in

many respects anomalous.  He is not in any just
sense the owner of the property, nor is he personally
interested, except in the compensation he receives for
his services.  On the one hand, he represents the court
by which he was appointed, and the property in his
charge is, in some sense at least, in the custody of the
law ; on the other hand, he represents the interests of
the corporation, and also of its creditors.  The busi-
ness which he carries on is public, so far as railways
are highways open to the public ; it is private, so far
as the profits derived from it are concerned.

It is somewhat anomalous for courts through the
instrumentality of receivers to conduct private busi-
ness for profit, yet the public exigencies and necessi-
ties for the continued operation of the great public
thoroughfares of the country, no matter what the
conflicting rights and interests of stockholders and
creditors may be, have been regarded as of such
force as to require the continued operation of railroads
through the instrumentality of receivers while the
rights of parties litigant are being adjusted through
the medium of the courts.  There is no transfer of in-
terest from the corporation to the receiver, but only a
transfer of management.  The business is carried on,
so far as owners and creditors are concerned, for the
purpose of securing a profit.  This profit goes into
the hands of the receiver to be applied in accordance
with the principles of law, and paid to the parties
justly entitled to it.  The surplus, if any, over oper-
ating expense goes exactly where it would go if the
business of the company was honestly conducted by
its officers.  There is still the same necessity for a
multitude of employees to keep its properties in repair
and working order, to operate its train service, to col-
lect and disburse its revenues, to keep its accounts,

and to protect its interests.   Receivers must, in the first instance, always assume control and generalship over the army of workers they find in the employ of the company.   While they have the power to employ and discharge, the general rule is that the force they find already organized is retained and used, except where found incompetent or inefficient.   The receiver becomes, in effect, the general manager, charged with the general supervision of the interests of the company, not through election by the stockholders or board of directors, but by appointment of the court.   He stands charged with the performance, then, of the corporate functions of the railroad company.   He causes trains to be run, and freight and passengers, mails and express matter to be transported for hire.   He collects all the revenues derived from the service.   From them he pays all the employees for their services, and discharges all other operating expenses.   In substance, then, the business of a railroad corporation in the hands of a receiver moves on as though under the direction of a general manager, to accomplish the same public purposes, to perform the same services for its patrons, to obtain for its bondholders and stockholders the same revenues as before.   The receiver, when acting in pursuance of and in obedience to the orders of the court, incurs no personal liability, and has no personal interest in the profits or losses of the business.   The substance, then, of the whole matter is that the railroad corporation is neither dead nor dormant.   It is, in fact, alive, active, and performing its proper functions as much as before.   Its properties are in existence and utilized for the same purposes as ever.   Does then the mere shadow of a receivership operate to transform completely the relations its employees sustain to

each other, and to the assets of the company? For the life and body of a corporation are its franchises, its business and its property. It is not a sentient being, and has no tangible or personal existence. A suit against a receiver is in form against an individual, but in substance it is against the corporate property in his charge. It is, in all essential particulars, in substance against the corporation itself. We think this is the view best sustained by the authorities, and most in consonance with reason and sound principles. "It is not the words of the law but the internal sense of it that makes the law, and our law, like all others, consists of two parts, viz., of body and soul. The letter of the law is the body of the law, and the sense and reason of the law are the soul of the law. *Quia ratio legis est anima legis.*" (*Intoxicating-Liquor Cases*, 25 Kas. 763, citing *Eyston v. Studd*, 2 Plow. 465.) The case of *Trust Co. v. Thomason*, 25 Kas. 1, was an action against the trust company by an employee, to recover damages under the same section of the statute now under consideration, and although the question as to the applicability of the statute to the case of a trustee operating the road is not much discussed in the opinion, the principle on which a liability was sustained in that case is very similar to that under consideration in this. The Union Trust Company was not a railway company, and therefore not within the letter of the statute, but it was operating a railroad, and the liability, which could arise only by force of the statute, was maintained in that case. In the case of *Hornsby v. Eddy*, 5 Cir. Ct. App. 560, (56 Fed. Rep. 461,) the identical question now before us was passed on by the United States circuit court of appeals for the eighth circuit. The statute was held

1. Railroad employee, injured —liability of receiver.

to apply, notwithstanding the Georgia and Texas cases which are cited in the opinion. The case of *Trust Co. v. Thomason,* supra, was regarded as, in effect, a construction of the statute in favor of the liability of a receiver. This decision was on a demurrer to the petition. The case was afterward tried, a verdict and judgment rendered against the receivers for $15,-000, the case again taken to the court of appeals (67 Fed. Rep. 219) and the judgment affirmed. Judge Caldwell, in delivering the opinion, says :

" An elaborate brief is filed by the plaintiffs in error in support of the contention that the section of the Kansas statute referred to does not apply to receivers operating a railroad, and that, as to them, the fellow-servant rule of the common law still obtains. This question was carefully considered when the case was first here. We are entirely satisfied with the result then reached."

Although the construction placed on the statute of this state by the federal court is not binding on us, the views of a court of such high character are entitled to most respectful consideratien. The Iowa statute, which in terms applies not only to the corporation, but to lessees and other persons owning or operating railroads, was held by the supreme court of that state, in the case of *Sloan v. C. I. Rly. Co.,* 62 Iowa, 728, to include receivers. In the case of *T. & P. Rly. Co. v. Cox,* 12 Sup. Ct. Rep. 905, the supreme court of the United States held that, as the statutes of Louisiana authorized an action against the receivers of a railway company for wrongfully causing the death of a brakeman, an action might be maintained in Texas against the receivers for acts done in Louisiana, notwithstanding the decision of the supreme court of Texas in the case of *Turner v. Cross,* 18 S. W. Rep. ( Tex.) 578. For other cases bearing more or less

directly on this question, see *Little v. Dusenberry*, 46
N. J. Law, 614; *Farrell v. Trust Co.*, 77 Mo. 477;
*Klein v. Jewett*, 26 N. J. Eq. 476; *Meara
v. Holbrook*, 20 Ohio St. 137. Complaint
is made that the verdict is excessive, but
we cannot say that it is so.

3. Verdict, supported.

The judgment is affirmed.

All the Justices concurring.