[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 250 
Prior to October 29, 1909, the respondent Frontier and Western Railroad Company was incorporated for the purpose of constructing and operating a steam railroad. As provided by law its certificate of incorporation amongst other things fixed precisely the location of the termini of the proposed road which were both within the county of Erie, stated its length which was four miles and specified that its route lay entirely within the said county.
At about the date specified it presented to the public service commission a petition asking that the latter certify that it had complied with the necessary preliminary conditions fixed by law and that public convenience and *Page 252 
necessity required the construction of said railroad as proposed in its certificate of incorporation, and that permission and approval for and of the construction of its road be granted. At the hearings by the commission for the purpose of passing upon said application much opposition developed on the part of various railroad corporations and to which in time was added the opposition of various property owners and of the city of Buffalo. In accordance with a rule established by the commission and their understanding of the statutes covering the subject, a map was filed by the petitioner showing exactly and in detail the proposed route of the railroad. After extended hearings and the production of much evidence the application was denied. The order of denial which it made and an opinion handed down therewith by one of the commissioners warranted the belief that the commission had been led to deny the application because it did not approve of the construction of a railroad upon the route indicated by the original map filed by petitioner and did not regard itself as having authority to grant a certificate for the construction of the road upon any other route.
On a writ of certiorari to review this determination it was by the Appellate Division in effect held that under the provisions of the Railroad Law upon such an application as this the applicant was not compelled to file a map showing the exact location of the route which it proposed to take and that the public service commission was not compelled or permitted to pass upon the application on the theory that construction could only be had upon such route, and in accordance with this view the proceedings were remitted to the commission to pass upon the application and decide whether public convenience and necessity warranted the construction of a road on the line identified in the articles of incorporation and with the instructions that in the determination of that question the commission should consider any route which did not vary the location of the road as identified in such articles of incorporation. *Page 253 
In accordance with this decision and direction the commission again took up the consideration of the application upon the evidence already taken and more testimony which was added thereto. As a result of this second and further consideration an order was made which in the present certiorari proceedings is attacked and presented to us for review. By this order the commission purporting to act first under section 9 of the Railroad Law (Cons. Laws, ch. 49), granted a certificate of public convenience and necessity and then purporting to act under section 53 of the Public Service Commissions Law (Cons. Laws, ch. 48), ordered "That permission and approval be and is hereby given pursuant to Section 53 of the Public Service Commissions Law for the construction of said railroad upon said route known as A-B-C, and the giving of such permission and approval is limited thereto, subject however to the right of the applicant to apply for a modification or change of such route for any reason which shall create a necessity therefor."
It may be briefly stated for the purpose of making plain these last provisions that maps had been filed by the petitioner and others of routes designated as A, B and C, and that the route adopted by the commission as the imperative condition of its consent was not only a combination of these routes but that such combined route fixed one of the termini of the proposed railroad two thousand feet distant from the terminus fixed in the articles of incorporation, and that this change necessitated the intersection of an important branch of one of the opposing railroad corporations by the route of petitioner's road.
Some of the objections now urged to the determination of the public service commission may be dismissed with brief mention. In our opinion the claims made upon the hearing before the commission that public interests would not be served by the construction of the proposed *Page 254 
road, that the project was a promotion scheme and not a meritorious enterprise and that capital could not be legitimately obtained for construction of the road so far as material, presented considerations of fact which became involved in the ultimate inquiry whether a certificate should issue, and that upon all of the evidence the determination of the commission would have been controlling upon us if unaffected by errors of law cognizable by us. There are, however, two important inquiries which seem to be presented by the determination and order of the public service commission.
The first of these is the one whether the petitioner seeking a certificate of convenience and necessity under section 9 of the Railroad Law was required with its application to file a map indicating with precision and in detail the proposed location of its road and whether the commission in passing upon the application was limited to a consideration of the particular line defined by such map or even by other ones filed in the course of the proceedings. We agree with the view of the Appellate Division set forth in the very comprehensive and accurate opinion of Mr. Justice LAMBERT on the first appeal that there is nothing in the provisions of the Railroad Law which sustains an affirmative answer to either of these connected questions.
We look in vain for any provision which reasonably requires the applicant to file such a map as a condition or necessary accompaniment of its application. Undoubtedly as a matter of convenience, information and evidence, the commission may, as it does, by its rules require such a map to be filed and the petitioner or its opponents might voluntarily file maps, but we find no statutory compulsion of this. The references in various provisions of the statute to maps used upon such a proceeding or to be presented to the commission do not sustain any other view than the one thus expressed. For instance the provision in section 9 requiring the certification by the *Page 255 
commission of maps in case it denies an application contemplates that maps undoubtedly would be filed and used upon the hearing and, therefore, provides for presentation of these to the Appellate Division with other evidence when it reviews the decision which has been made. The provision in section 89 requiring maps to be presented to the commission showing intersections of highways and streets by the proposed road clearly was not intended to facilitate or control the precise location of the route.
Not only are there no provisions in the Railroad Law limiting the commission in its consideration of the inquiry whether a certificate shall be granted, to a particular line designated on a map, but on the contrary we think the history and language of the provisions of the Railroad Law governing this subject strongly negative any such theory. Prior to 1892 sections 2 and 6
of the Railroad Law contained substantially the same provisions now found in sections 5 and 16 of that law requiring a railroad corporation to give in its certificate of incorporation a general description of its proposed route and later to file a map showing exactly the proposed line of its road, and to give notice thereof in order that objections by property owners to such proposed route might be considered and the location thereof finally and definitely fixed. There was no provision giving the railroad commission any duty or power in respect of such exact location.
In 1902 without in any manner repealing these provisions providing for the location of the route of the proposed railroad without the help of the railroad commissioners a new section was added requiring the corporation to secure from the railroad commissioners a certificate of public convenience and necessity before construction. It is well understood that the fundamental purpose of this enactment was not to require said commissioners to pass upon and adopt or reject the precise *Page 256 
location of the road as defined by some map but rather to determine whether public considerations warranted the construction of a road along the route which was generally fixed by specification of termini, length and counties to be traversed in the certificate of incorporation. The object was to permit the railroad commissioners to prevent wasteful competition and public disaster by the construction of roads through localities which already were adequately served rather than to require them to determine the precise line along which roads should run.
Even further than this it appears that if the commission should spend its time in considering and requiring the location of the proposed road on a specifically definite line such location even when fixed by it would not control the result of proceedings instituted under section 16 for the location of the road and would not prevent the exercise by the board of directors of the corporation of that power to change the route which is conferred by section 24.
Therefore, we hold that in passing upon petitioner's application for a certificate of public convenience and necessity under the provisions of the Railroad Law the commission was required to test such application by considerations which were applicable to the route as generally defined in the articles of incorporation and not to answer it on the theory that some exact line within that route specified by it or delineated on some map would be controlling. This is what was done by the commission on this branch of petitioner's application and we then come to the second important inquiry whether having done this the commission had the power under section 53 of the Public Service Commissions Law to modify and limit its prior action by placing its permission and approval for and of the construction of the road in that section provided for upon the condition that a specific line be followed. *Page 257 
This involves a consideration of the purpose and meaning of said section which has been a source of judicial perplexity on more than one occasion. This court has never yet attempted completely to fathom the legislative mind and decide what its complete purpose was in enacting the section or to determine the full extent to which its provisions invested with powers and duties the public service commission in its regulation and control of the organization, construction and operation of steam railroads. Our views of the section so far as they have gone have been expressed in decisions determining what it did not mean and in holding what it did not authorize. (Village of FortEdward v. Hudson Valley Rway. Co., 192 N.Y. 139; People exrel. N.Y., N.H. H.R.R. Co. v. Willcox, 200 N.Y. 423; Peopleex rel. Third Ave. Rway. Co. v. Public Service Commission,203 N.Y. 299.) Pertinent considerations of the present case will chiefly lead us along the same line.
We might easily limit our consideration by holding that in giving permission and approval under section 53 for the construction of applicant's road conditioned upon the adoption of a certain line, the present order is unauthorized for a special reason. The route prescribed by the commission involved moving one of the termini of the proposed road from the point fixed in the articles of incorporation to another point distant therefrom over two thousand feet, this change involving the intersection by the proposed road of an additional line of existing road. We think that this alteration of the location of a terminus of itself rendered the action of the commission in the respect now under discussion entirely invalid. It was thought by the Appellate Division that this change was so unsubstantial and immaterial that it might be disregarded, but we disagree with this view. Possibly it might be held that in the location of the route of a railroad two or three hundred miles long the shifting of a *Page 258 
proposed terminus by a few hundred feet would not be of consequence when tested by the magnitude of the entire undertaking, but here the proposition was to change the location of one terminus of a road only four miles long and running through a thickly congested territory by nearly half a mile and thereby necessitating an extra intersection of railroads. We do not believe that either as matter of law or of fact such alteration can be disregarded as immaterial.
But inasmuch as this error might be corrected upon another hearing it seems best to consider in a broader way the meaning and effect of section 53 as applied to the present proceeding.
The section quite distinctly divides into two classes the acts of a railroad corporation which require for performance prior permission and approval of and by the public service commission. In one class is the process of construction and in another class is "any franchise or right under any provision of the Railroad Law or of any other law." No one of these acts or rights can be performed or exercised until the permission and approval of the commission has been secured.
There is no particular difficulty in appreciating the propriety of the section in respect of the latter class of acts and of the requirement for such permission and approval. In fact in many of the provisions both of the Railroad Law and of the Public Service Commissions Law conferring various rights, franchises and privileges upon a railroad corporation it is specifically provided that the exercise thereof shall be subject to the permission and consent of the public service commission. It is easy to understand that in the way of reasonable prudence the legislature may have deemed it wise to enact a general provision such as is now found in section 53 to cover some case where a privilege had been granted without specific requirement for such prior consent.
The purposes of the section in requiring approval and *Page 259 
permission of the commission before a railroad corporation can undertake construction of its road are more obscure where application under section 9 of the Railroad Law and section 53 of the Public Service Commissions Law are made at the same time. We know that on the application under the provisions of the Railroad Law for a certificate of public convenience and necessity the commission is permitted and it is the practice, especially if opposition to the application arises, thoroughly to weigh all of those considerations which properly enter into the determination of the ultimate question whether the public interests will be served by the construction of a road along the general route indicated in the certificate of incorporation. It would seem as though the action of the commission if it grants a certificate would be sufficient evidence of its permission and approval for and of the construction of the road and of course this was the view prior to the enactment of the Public Service Commissions Law in 1910.
However, we have section 53 which does require permissive and approving action by the commission in addition to the certificate of public convenience and necessity and it is our duty to give a reasonable interpretation to it.
The provisions of the Railroad Law requiring a certificate of public convenience and necessity relating only to the general route specified in the certificate of organization and the further provisions of such statute providing for the exact location of the road have not been repealed expressly nor in our opinion by implication. We, therefore, have the case of two statutes relating to the same subject-matter with the requirement that they be so construed if possible as to operate harmoniously and reasonably. As has been said it is not necessary to attempt to forecast the full scope of section 53, but we shall content ourselves with stating what in our judgment cannot be done under it in this case. *Page 260 
No question is here raised but that it is permissible for the commission as it did in this proceeding to pass on the application for permission and approval under section 53 at the same time that it considers the application for a certificate of convenience and necessity under the Railroad Law, and for the purposes of this appeal we are adopting that view. It would be an unreasonable and absurd interpretation of section 53 if we should hold that a public service commission which after an arduous contest and a long hearing had decided that a certificate of public convenience and necessity ought to be granted, might then without any intervening considerations decide under section 53 that it nevertheless would not grant the permission and approval necessary to make its certificate operative for the construction of the road. We think that it would be an interpretation, unjustifiable only in lesser degree, if we should hold that the commission after granting such certificate of convenience and necessity under which the location of the road was limited only by the description in the certificate of organization, might then without new circumstances modify or nullify its certificate by conditioning its permission and approval under section 53 on the limitation that the road should be built on an exactly specified line. To such a condition there are two-fold objections. In the first place it would enable the commission indirectly to prescribe the exact line of the road when it had no direct power to do this, and in the second place its condition would be futile because the location of the road would still be subject to fixation under the provisions of the Railroad Law to which reference has been made notwithstanding the condition and action of the commission.
Therefore, we hold that the commission had no power to make an order predicating its permission and approval under section 53 upon the condition that the petitioner should adopt the exact line of construction therein specified. *Page 261 
In principle we think that the question presented in this case is not unlike the one which was considered in the case of Peopleex rel. South Shore Traction Company v. Willcox (196 N.Y. 212,217).
In that case upon the application of the relator it was determined by the public service commission that the construction of a line of street railway was both necessary and convenient for the public service. Nevertheless the commission refused to grant permission and approval under section 53 because it was thought that if granted the applicant company would be put in a position of control for street railway purposes of a certain thoroughfare under conditions which would be disadvantageous to the public. We held that these considerations did not authorize the public service commission to withhold its permission and approval, saying: "Assuming, without deciding, that the powers of the public service commission under section 53 of the Public Service Commissions Law are broader than were the powers of the board of railroad commissioners in respect to certificates of public convenience and necessity, we think that there is no tenable construction of the existing statute which authorizes the public service commission to do what it has attempted to do in this case. The mere possibility of future contingencies which might arise in a period of fifty years could not properly be considered as reasons for declining to sanction the construction of a railroad line" which was demanded by considerations of public convenience and necessity.
So in this case the public service commission having made what on its face was a determination that public convenience and necessity required a construction of petitioner's railroad somewhere within the lines of the general route specified in its certificate of incorporation as such location might be thereafter specifically fixed under proper proceeding, it could not in our judgment turn around and limit its action to a consent predicated on the *Page 262 
use of a certain specified line when the location of such line was something over which it had no power.
There remains to consider one further question. That question is the one whether the provisions of the order made by the public service commission which we have held to have been unauthorized and illegal may be detached from the remaining provisions and thus disregarded and the order allowed to stand so far as it grants a certificate of public convenience and necessity.
We should be glad if this could be done, for whatever the final disposition upon the merits may be there is no doubt that the labors and expense of the petitioner in attempting to procure permission to construct its road have been greatly increased through the misinterpretation by the public service commission of the statutes which cover the proceeding. We do not, however, think it is possible to relieve the petitioner by a process of separation of the different provisions of the order which has been made and thus, by elimination of the illegal provisions, affirm the balance of the order. A court is not justified in eliminating and disregarding illegal provisions of an order unless it is apparent that the provisions which are legal in form are not connected with and affected by those which are illegal. We do not think that we can fairly say that that is the present case, but must say that the reverse is true. The history of this proceeding as we have detailed it indicates that the commission was largely possessed of the idea that it had the duty and power to fix the specific, exact line of petitioner's road if it granted a certificate of convenience and necessity. While the decision of the Appellate Division on the first appeal made it clear that it did not have this power under the provisions of the Railroad Law it still clung to the idea apparently that it could do this as a condition of granting a permission and approval under section 53. Therefore, it seems plain to us that the commission granted the general certificate of convenience and necessity *Page 263 
by one part of its order under the provisions of the Railroad Law, but did this with the view and belief that it could then incorporate provisions under section 53 of the Public Service Commissions Law whereby it would fix the exact line of petitioner's road and thereby accomplish what it deemed to be wise and necessary. Thus it seems plain that the two provisions of the order are connected and must be considered together and that in making this decision in favor of a certificate of public convenience and necessity we must assume that the commission was influenced by what it purposed to do in the succeeding provision limiting the route of petitioner. If this view is correct no part of the order can be allowed to stand. It is the right of the opponents of the road to have the public service commission say without limitation and the imposition of what it deems to be safeguards in respect of the exact line of route, whether public convenience and necessity require the construction of the road through the locality and along the route which is generally defined by the articles of incorporation and subject to the location of the specific line by proceedings in another form. That question we do not think has been fairly passed upon and, therefore, it becomes necessary to remit the proceedings to the public service commission to consider it.
The order of the Appellate Division should be reversed, the writ sustained, the determination of the public service commission annulled and the proceedings remitted to that commission to pass upon petitioner's application in accordance with the rules herein stated, without costs.
CHASE, COLLIN and POUND, JJ., concur; CRANE, J., dissents; McLAUGHLIN, J., not sitting; HOGAN, J., absent.
Ordered accordingly. *Page 264