TIMOTHY J. SULLIVAN, administrator, *vs.* JAMES H.
HUSTIS, receiver.

Suffolk.    December 8, 1920. — February 28, 1921.

Present : RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Receiver. Negligence,* Causing death, Neglect to give statutory signals at grade
crossing. *Actionable Tort.*

Sections 65 and 66 of the Judicial Code of the United States, 36 U. S. Sts. at Large,
1104, 1105, require a federal receiver of a railroad corporation to conduct its
business and operate its system of transportation in conformity to valid State
laws upon the same footing, with like responsibility and subject to the same
liability to respond to suits as would rest upon the corporation if it were in
possession and operating.

Section 147 of St. 1906, c. 463, Part II, was designed to afford protection from in-
jury to travellers upon highways at grade crossings with railroads, and its imme-
diate tendency was to promote the safety, comfort and convenience of the
travelling public.

Section 245 of St. 1906, c. 463, Part II, so far as it concerns recovery of damages
for the causing of the death of a traveller upon a highway at a grade crossing
with a railroad by reason of neglect of a railroad corporation to give the signals
required by § 147, while in some aspects punitive in its nature, is not criminal
but has important remedial features.

A receiver of a railroad corporation in this Commonwealth, appointed by a decree
of a District Court of the United States, is liable under St. 1906, c. 463, Part II,
§ 245, to the same extent as the corporation would be liable, were it operating
the railroad, for personal injury or the causing of the death of a person by
neglecting to give the signals required by § 147 of the statute.

TORT under St. 1906, c. 463, Part II, § 245, with a declaration
in two counts, the first for damages due to conscious suffering of
Catherine Sullivan and the second for the causing of her death in
a collision, due to a neglect to give the signals required by § 147
of the statute, at a grade crossing of a highway in North Wil-
mington with the Boston and Maine Railroad, the defendant
being temporary receiver of the railroad corporation under a
decree of the United States District Court for the District of
Massachusetts.    Writ dated May 19, 1917.

The defendant demurred, assigning as grounds of demurrer
to both counts (1) that no legal cause of action was therein set

forth, (2) that no obligation was imposed on this defendant by St. 1906, c. 463, Part II, § 147, to give any signals at a grade crossing, and (3) that no obligation was imposed by any statute upon this defendant to give any signals at a grade crossing; and as an additional ground for demurrer to the second count (4) that neither Part I, § 63, nor Part II, § 245, of St. 1906, c. 463, imposing a liability upon a railroad corporation by indictment or, in substitution therefor, by an action of tort for loss of life at a railroad crossing and on other occasions, applied to this defendant, who was not a railroad corporation within the meaning of said sections.

The demurrer was heard by *J. F. Brown*, J., and was sustained, and the judge thereupon reported the case to this court for determination.

*James J. McCarthy*, for the plaintiff.

*A. W. Rockwood*, for the defendant.

RUGG, C. J. This is an action of tort. The declaration sets forth in one count that the defendant is temporary receiver of the Boston and Maine Railroad, duly appointed by the United States District Court for the district of Massachusetts, and that personal injury and suffering came to the plaintiff's intestate while a traveller on a highway in Wilmington, at a place where the tracks of the Boston and Maine Railroad cross the highway at grade, through collision with an engine or cars arising from the neglect to give the grade crossing signals required by St. 1906, c. 463, Part II, § 147. The other count is like, except that it sets forth the death of the plaintiff's intestate. Both counts are founded on § 245 of said Part II, which is in these words: "If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing such as is described in section one hundred and forty-seven, and it appears that the corporation neglected to give the signals required by said section, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment as provided in section sixty-three of Part I, or, if the life of a person so injured is lost, to damages recoverable in an action of tort, as provided in said section, unless it is shown that, in addition to a mere want of ordinary care, the person injured or the person who had charge of his person or property was, at the time of the collision, guilty of gross or wilful

negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

The defendant demurred. The question to be decided is whether the defendant as receiver can be held liable under said § 245.

There is no provision of our railroad act in express terms imposing upon receivers the obligations of this kind resting upon railroad corporations.

Pertinent provisions of federal statutes are found in the Judicial Code of the United States, Act of Congress of March 3, 1911, 36 U. S. Sts. at Large, 1104, 1105, as follows:

"Sec. 65. Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall willfully violate any provision of this section shall be fined not more than three thousand dollars, or imprisoned not more than one year, or both.

"Sec. 66. Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice."

These sections in substance and effect are re-enactments of the Act of Congress of March 3, 1887, c. 373, §§ 2, 3, 24 U. S. Sts. at Large, 554, and Act of Congress of August 13, 1888, c. 866, §§ 2, 3, 25 U. S. Sts. at Large, 436.

These sections of the federal statutes have been considered by the Supreme Court of the United States in several cases. In holding that a receiver of a railroad was, under Act of Congress of March 3, 1887, c. 373, § 3, 24 U. S. Sts. at Large, 554, liable for the acts of his predecessor in the same office, it was said in

*McNulta* v. *Lochridge,* 141 U. S. 327, at page 331: "We agree , . . that with respect to the question of liability he stands in place of the corporation;" and at page 332: "Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences and liabilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands. As the right given by the statute to sue for the acts and transactions of the receivership is unlimited, we cannot say that it should be restricted to causes of action arising from the conduct of the receiver against whom the suit is brought." An action of tort for negligent setting of fire by sparks from a locomotive was before the court in *Eddy* v. *Lafayette,* 163 U. S. 456, where at page 464 it is said: "The trial court and also the Circuit Court of Appeals were of opinion that the third section of the judiciary act of March 3, 1887, c. 373, § 3, 24 U. S. Stat. 552, 554, authorizing suits to be brought against receivers of railroads, without special leave of the court by which they were appointed, was intended to place receivers upon the same plane with railroad companies, both as respects their liability to be sued for acts done while operating a railroad and as respects the mode of service. We concur in that view. . . ." An action was brought against receivers of a railroad in *United States* v. *Harris,* 177 U. S. 305, to recover penalties in the name and for the benefit of the United States for the alleged knowing and wilful violation of the laws of the United States respecting the watering of live stock while in transportation. In the course of an opinion holding that such recovery could not be had because as matter of statutory construction the word "company" could not rightly be said to include "receivers of such company," it was said at page 308: "It may be conceded that it was the intention of Congress [by enacting the Act of August 13, 1888, c. 866, §§ 2 and 3, 25 U. S. Sts. at Large, 436], to subject receivers of railroad companies, appointed such by courts of the United States, to the valid laws and regulations of the States and of the United States, whose object is to promote the safety, comfort and convenience of the travelling public." The statute there before the court was strictly penal without compensatory features. The penalty was payable to the United States and not by way of damages to the owner of

the cattle or other person suffering injury. It was in its essence criminal in nature. In an opinion in the same case in the district court it was said, 78 Fed. Rep. 290, 291, "The construction of the statute, and the proceeding under it are governed by the rules of the criminal law, as fully as if the proceeding was by indictment. The exclusive purpose of the section is to inflict punishment." The decision in *United States* v. *Harris*, to the effect that a penalty for the transportation of cattle by a railroad company could not be imposed upon the receiver of the railroad was reaffirmed in *United States* v. *Nixon*, 235 U. S. 231, but a different conclusion was reached because of an amendment to the act of Congress not here relevant.

These excerpts from decisions of the United States Supreme Court show that §§ 65 and 66 of the Judicial Code have no constricted meaning but are to be interpreted broadly to effectuate the operation of business carried on by receivers appointed by the federal courts with as much regard for the safety and protection and general observance of the rights of others both in contract and in tort as would be required of the owners of the property of which as receivers they have possession.

The words of the pertinent sections of the Judicial Code require the receiver of a railroad corporation to conduct its business and operate its system of transportation in conformity to valid State laws upon the same footing, with like responsibility and subject to the same liability to respond to suits which would rest upon the owner if in possession and operating.

The doubt to be resolved is whether our statutes, upon which this action rests, fairly can be construed to be sufficiently inclusive to render a receiver liable.

The provisions of St. 1906, c. 463, Part II, § 147, requiring the ringing of the bell and sounding of the whistle at highway grade crossings manifestly were designed to protect travellers on the highway from danger of injury. That section relates specifically to the management and operation of the trains of the railroad and therefore falls within the precise terms of § 65 of the Judicial Code requiring the receiver to "manage and operate such property according to the requirements of the valid laws of the State." One purpose of the Legislature in enacting said § 147 was thus to afford warning to travellers upon the highway of the peril in-

evitably attendant upon crossing a railroad, in order that personal harm and loss of life may be avoided. Another purpose was in case of accident to give some compensation to those suffering directly from the injury or loss of life. Observance of the requirements of the statute calls the attention of those in charge of locomotives to the crossing to the end that they also may take whatever measures may be within their power to prevent a grade crossing accident with its possibility of harm both to those travelling upon the highway and to those connected with the locomotive and train as employees and passengers. From every point of view the immediate tendency of the statute is "to promote the safety, comfort and convenience of the travelling public." *United States v. Harris,* 177 U. S. 305, 308. These ends are of equal importance, whether the railroad corporation or a receiver is operating the trains.

It is settled beyond doubt by a long line of decisions that said § 245, so far as concerns recovery of damages for death, is in some aspects punitive in its nature. Only a few recent cases need be cited. *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510. *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582. *Johnston* v. *Bay State Street Railway,* 222 Mass. 583. *Duggan* v. *Bay State Street Railway,* 230 Mass. 370, 376. Nothing here decided narrows or limits the scope of those decisions. The words "penal" and "punitive," which have been used from the beginning to describe the nature of our death statutes, were necessary and accurate because at the first all such statutes were criminal in form and were prosecuted by indictment. Later, when the remedy by action of tort was added in some cases and substituted in others for indictment, and in still other instances new causes of action by tort created for the death resulting from negligence, the amount to be recovered never has been based on damages sustained by the family of the deceased. See *Brooks* v. *Fitchburg & Leominster Street Railway,* 200 Mass. 8, where the statutes are reviewed. The amount recoverable always has been ascertained and assessed with reference to the culpability of the defendant himself or his agents and never with any reference to the actual loss sustained by the plaintiff, or by the widow, the family, or next of kin of the deceased. The words "penal" and "punitive" have continued to be used rightly as descriptive of the method of determining

the damages recoverable. They also have been used correctly
when the rights between themselves of those who have contributed
to causing the death of a human being were involved. *Boott Mills*
v. *Boston & Maine Railroad,* 218 Mass. 582. It is not necessary
to speculate as to the reason for this aspect of our death statutes.
See *Sullivan* v. *Old Colony Street Railway,* 197 Mass. 512, 516, 517.
The fact is indubitable.

But said § 245 has also compensatory features and a remedial
function. The money exacted from a defendant is paid to the
use of the widow, children or next of kin of the deceased, St. 1906,
c. 463, Part I, § 63, and not to or for the benefit of the State.
While damages are not assessed on the basis of compensation but
with reference to the extent of the element of wrongdoing in the
tortious act, nevertheless they are paid for the benefit of the per-
son injured or the family of the person whose life is lost. Doubt-
less this feature of the law was enacted to supplement the rule of
the common law that the family of one who lost his life through
negligence could recover no damages from the wrongdoer. In
*Commonwealth* v. *Eastern Railway,* 5 Gray, 473, at page 474, re-
specting one of our early death statutes, it was said: "Although
the proceedings . . . assume the form adapted to a criminal
offence . . . yet it is apparent that a leading object of the statute
was to secure some pecuniary provision for the widow and chil-
dren, or heirs at law . . . the fine is to be recovered to the use of
the executor or administrator of the deceased person . . . for the
benefit of the widow and heirs at law." It was said in *Common-
wealth* v. *Boston & Albany Railroad,* 121 Mass. 36, 37, in referring
to Gen. Sts. c. 63, §§ 97, 98, conferring remedy by indictment
alone for loss of life, "Both sections contemplate proceedings, as
for a criminal offence, by indictment; but a leading object of them
is to secure some pecuniary provision for those who may be de-
pendent upon the deceased, and while penal in form, they are
therefore largely remedial in character." The right to an action
of tort in addition to the remedy by indictment was created first
by St. 1881, c. 199, with respect to railroads and has been
continued to the present. This civil "action differs in important
particulars from the remedy by indictment. The latter is not
available as a matter of right, but is a remedy in the name of the
Commonwealth, dependent upon the action of the grand jury, and

to be enforced by or under the direction of a public officer, and according to the forms of criminal proceedings. The civil action may be instituted by the executor or administrator of the deceased person of his own motion; the trial will be before the court, without a jury, unless a jury trial is demanded by one of the parties; in case of trial by jury, the damages are to be assessed by the jury; the burden of proof will be sustained by proving the issue by a preponderance of evidence; and the plaintiff will recover or be liable to costs, as the result of the case may be." *Kelley* v. *Boston & Maine Railroad*, 135 Mass. 448, 449. *Grella* v. *Lewis Wharf Co.* 211 Mass. 54, 59. An action like the present, therefore, is assimilated in most of its aspects so far as concerns the plaintiff to a civil action.

It may be conceded that State statutes imposing criminal liability upon a railroad corporation in respect of the operation of its road would not render the receiver subject to complaint or indictment, unless he is expressly named. See St. 1906, c. 463, Part II, § 155.

The words "penal" and "punitive" are used often in a criminal sense as applied to actions. But there is a well established distinction "between a suit for penalty by a private individual in his own interest, and a suit brought by the government or people of a State for the vindication of public law." *Huntington* v. *Attrill*, [1893] A. C. 150, 161.

A statute manifestly intended to protect human life and to impose an extraordinary civil liability, not existing at common law, upon those causing death, by subjecting them to a private action for recovery of damages for the pecuniary benefit of the family of the deceased, not inuring in any particular to the benefit of the State, is not criminal but has important remedial features. It has been held in numerous decisions that such a statute is not criminal or penal in an international sense, but that civil rights founded on it may be enforced in the courts of another jurisdiction. *Huntington* v. *Attrill*, 146 U. S. 657, 675. *Huntington* v. *Attrill*, [1893] A. C. 150. *Loucks* v. *Standard Oil Co. of New York*, 224 N. Y. 99. *Hill* v. *Boston & Maine Railroad*, 77 N. H. 151. *Boston & Maine Railroad* v. *Hurd*, 47 C. C. A. 615. *Whitlow* v. *Nashville, Chattanooga & St. Louis Railway*, 114 Tenn. 344. *Gardner* v. *New York & New England Railroad*, 17 R. I. 790.

*Raulin* v. *Fischer*, [1911] 2 K. B. 93.  *Malloy* v. *American Hide & Leather Co.* 148 Fed. Rep. 482.  There is general recognition of this principle, although there has been some divergence of view in its application.  *Cristilly* v. *Warner*, 87 Conn. 461, 467.  *Adams* v. *Fitchburg Railroad*, 67 Vt. 76.  *Raisor* v. *Chicago & Alton Railway*, 215 Ill. 47.  *O'Reilly* v. *New York & New England Railroad*, 16 R. I. 388.

In *Wall* v. *Platt*, 169 Mass. 398, it was decided that receivers of a railroad were liable under a statute which provided that "Every railroad corporation . . . shall be responsible in damages to a person . . . whose buildings or other property may be injured by fire communicated by its locomotive engines."  The reasoning upon which that decision rests is in large measure equally applicable to the present facts.  In that opinion, after referring to the facts that the receivers in the operation of the railroad stand in many important respects in the place of the corporation, having sole possession of its property, exercising all its franchises, conducting its business as common carrier, and succeeding for the time being to many of its most important powers, privileges and obligations, it was said (page 401): "The mischief for which the statute is designed to provide a remedy is as incident to the operation of the road in their hands as in those of the corporation.  And we cannot think that, by the use of the words 'railroad corporation,' the Legislature intended to exclude them from liability under the statute in question, but that the words were used in a comprehensive sense sufficiently broad to include parties holding the relation to the corporation which receivers of a railroad usually do."  The liability established by the statute there in question did not rest upon any principle of the common law nor upon negligence.  It might arise even though the highest care was exercised.  In *Commonwealth* v. *Boston & Worcester Railroad*, 11 Cush. 512, in construing a death statute, it was held that, although the word "proprietors" in the section there under consideration might not "technically describe a corporate body created in the manner and form our railroad corporations are," yet undoubtedly it ought to be given the effect of "embracing common carriers incorporated or not."  In *Collector of Taxes of Lakeville* v. *Bay State Street Railway*, 234 Mass. 336, it was held that the appointment of a receiver did not affect the excise tax to

be assessed upon "a street railway . . . company" in respect of the length of its operated lines, following the principle of *Wall* v. *Platt*, 169 Mass. 398. That principle is applicable to the case at bar.

It follows that a receiver of a railroad corporation is made liable under the statutes of this Commonwealth to actions in tort under St. 1906, c. 463, Part II, § 245, for personal injury or loss of life arising from failure to give the signals required by § 147 to the same extent as the corporation owner would be liable if operating the railroad itself.

Several decisions are in accord with the result here reached, *Meara* v. *Holbrook*, 20 Ohio St. 137, *Lamphear* v. *Buckingham*, 33 Conn. 237, *Little* v. *Dusenberry*, 17 Vroom, 614, *Lyman* v. *Central Vermont Railway*, 59 Vt. 167, while other courts have reached a contrary result, *Turner* v. *Cross*, 83 Texas, 218, *Henderson* v. *Walker*, 55 Ga. 481. It is not necessary to review these decisions because they all rest upon statutes differing more or less from the one here considered. See, also, *Peirce* v. *Van Dusen*, 24 C. C. A. 280; *Hornsby* v. *Eddy*, 5 C. C. A. 560; *Sloan* v. *Central Iowa Railway*, 62 Iowa, 728; *Mikkelson* v. *Truesdale* 63 Minn. 137; *Rouse* v. *Harry*, 55 Kans. 589.

The decision in *Griffin* v. *Hustis*, 234 Mass. 95, 98, was predicated upon the assumption that St. 1906, c. 463, Part II, § 147, relative to the giving of signals by trains approaching grade crossings applied to the defendant as receiver. But the point here raised was not there urged nor adjudged and the case at bar has been considered without reference to that decision. It supports the conclusion here reached.

The order sustaining the demurrer is reversed and the demurrer is to be overruled.

*So ordered.*