THE YONKERS RAILROAD COMPANY, Respondent, *v.* ARTHUR C. HUME, as Receiver of the MERCHANTS COMMUNITY BUS TRANSIT, INC., and Another, Appellants.

Second Department, February 15, 1929.

*Arthur C. Hume* and *William A. Walsh*, for the appellants.

*Alfred T. Davison* [*Victor McQuistion* and *Addison B. Scoville* with him on the brief], for the respondent.

KAPPER, J. On February 17, 1927, the city of Yonkers granted to the Merchants Community Bus Transit, Inc., separate franchises and consents for the operation of bus lines on fourteen separate and distinct routes, all of the said franchises concededly being identical in form with the exception of the specification of the routes. On August 4, 1927, the Public Service Commission granted to said bus company seven separate certificates of convenience

and necessity for the operation of buses over that number of routes, at the same time refusing the petitioner's application as to the seven remaining routes. The plaintiff here, a street railroad corporation operating in the city of Yonkers, opposed before the Public Service Commission the granting of nine such certificates, but was defeated as to two of them, which, together with the five unopposed, constitute the seven bus routes now before us.

On February 25, 1928, the defendant Arthur C. Hume was appointed receiver of the property of said bus company by the United States District Court, Southern District of New York. The receiver continued bus operation as prescribed by the franchises and the certificates of the Public Service Commission, but has since been operating on some streets not included in the franchises and certificates and has also attempted to operate buses interchangeably on different routes instead of a physical transfer of passengers which the plaintiff claims is the limit of right under the franchises and certificates.

This the receiver is endeavoring to accomplish by a combination of routes so as to continue a bus on one line, without transfer of passengers, over the route of another and intersecting line or route. The object of the receiver may subserve public convenience by bringing passengers from the remote sections of the city of Yonkers into the heart of the city in and upon the same vehicle without the inconvenience of transfer, but whether such operation subserves the public interests is not for the courts to say, but is left, in my opinion, solely to the jurisdiction of the Public Service Commission, after due consent of the municipality. The question is one of importance, not alone to the traveling public, but also to the plaintiff whose railroad is materially damaged if the receiver's effort may be upheld.

The injunction granted by the learned Special Term incorporates certain streets on and over which the defendants are prohibited from operating buses, and for which, it is undisputed, the defendants have no franchise or certificate of convenience and necessity from the Public Service Commission. There is, therefore, no doubt of an attempted illegal use of the public streets by the defendants in so far as concerns those particular highways. The injunction order also prohibits the defendants from operating buses over intersecting lines by interchanging routes and effecting what is characterized as combination of routes.

The Transportation Corporations Law (§§ 65, 66, as amd. by Laws of 1926, chap. 762) declares bus companies to be common carriers, and that they shall not operate within the limits of a city " in competition with another common carrier which is required by

law to obtain the consent of the local authorities of such city to operate over the streets thereof " without having first procured the consent of the local authorities of such city, and thereafter only " shall a certificate of public convenience and necessity be issued " for such bus operation. (See *Matter of City of Long Beach* v. *Pub. Serv. Comm.*, 249 N. Y. 480.)

In the present litigation the local authorities have consented to the bus routes of which the Public Service Commission in due course approved. Each route, as stated, was separately and distinctly defined. The Public Service Commission incorporated in each certificate certain requirements to be met upon the part of the grantee, but did not express in such certificate any authority or permission to effect combinations for continuous riding in a certain direction by running partly over one route and partly over another or others. The Public Service Commission had before it for consideration the provision of the franchises granted by the city, reading as follows:

" Twenty-ninth. *Combination of Routes:* The bus operator may, with the approval of the Common Council, operate the motor bus lines herein authorized in combination with any other motor bus lines which he or it may be authorized to operate by the City of Yonkers, provided such combinations shall be for the convenience of the public and provided that before such combination of routes shall be put into operation, the bus operator shall submit, in writing to the Common Council, a statement of such proposed combination of routes and receive its approval of the same."

The opinion of the Public Service Commission dealt with this subject of " combination of routes," and pointed out the importance of conserving the rights of the railroad company consistent with public convenience and necessity, adding (pp. 8, 9 of opinion): " Combination of routes means physical transfer of passengers from one bus to another. The petitioner expects this (minutes, p. 872) and such transfer can be no more inconvenient than transfer from one bus to street car. When there are two means of transportation covering different sections of a city, it is impossible to avoid physical transfer, and this condition would not be abolished were all the routes petitioned for, granted certificates."

The situation thus dealt with was clearly intended to prevent the bus company from operating the same bus on two or more separate routes to bring passengers into the business heart of the city. The routes as laid out and approved by the Public Service Commission contemplated a five-cent fare on the bus on one of the routes, route No. 8, where a connection was had with the railroad company which in turn carried the passenger for another five-cent

fare to the city's center. By allowance of the defendants' purposes, this connection with the trolley railroad would be circumvented, to the obviously great injury of the plaintiff. The rate of fare was so fixed by the Public Service Commission that an additional fare would have to be paid on transfer to the bus company, so that the traveling public would not obtain a less expensive ride.

Section 53 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134) provides that no common carrier shall exercise any franchise or right "without first having obtained the permission and approval of the Commission." This statute, read in connection with the sections of the Transportation Corporations Law (*supra*), shows that two steps upon the part of the Public Service Commission are requisite to a valid bus franchise; one, the permission and approval of the Commission, and the other, the certificate of public convenience and necessity. Such is the construction placed upon the statutes as I read the opinion of Chief Judge HISCOCK in *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Pub. Serv. Comm.* (227 N. Y. 248, 258, 259). While the Public Service Commission's certificates to the bus company show that the public convenience and necessity required their being granted, it must also be assumed that the requisite permission and approval referred to in the statute was cotemporaneous with the granting of the certificates. The further provision in section 53 of the Public Service Commission Law, to which reference should be made, is that the Commission "shall have power to grant the permission and approval herein specified whenever it shall after due hearing determine that * * * such exercise of the franchise or privilege is necessary or convenient for the public service." Having already pointed out the view of the Public Service Commission regarding combination of routes, and the limits of the language in the certificates themselves, it cannot be assumed that the rights of the bus company are greater than those so charted or defined. If the reservation of power in the municipal franchises to approve "combinations" were to be given a construction authorizing it to approve such acts although not authorized or sanctioned by the Public Service Commission, the reservation of power would have to be subordinated to the paramount authority of the Public Service Commission Law. (*People ex rel. South Shore Traction Co.* v. *Willcox*, 196 N. Y. 212, 217.) The conclusion to which I have come upon this branch of the case is that application for such a change of operation as would permit of a running of buses upon lines interchangeably under a theory of combination of routes must be made to the Public Service Commission. Without their permission and approval the thing cannot be done.

Evidently, the appellants, realizing that further official action was essential to the accomplishment of the purpose contemplated, applied to the common council of Yonkers for an approval of their scheme of combination of routes. A resolution accordingly was introduced at a special meeting of the common council held January 2, 1929, and was approved at the same meeting, but not unanimously. The purport of the argument of the appellants is that this resolution was not legislative in character, but was simply " an administrative or executive act taken under and in pursuance of the previous legislative act by this same body," namely, the common council, in the grants of the franchises. I am unable to subscribe to that view.

Where the common council of a city acts upon a franchise, whether the original franchise or by extension of rights, it acts legislatively and not as an administrative body. That the granting of a municipal bus franchise is a legislative act was fully discussed, and so settled in *Matter of City of Long Beach* v. *Pub. Serv. Comm. (supra)*. Nothing in section 37 of the Second Class Cities Law (which by virtue of the Home Rule Amendment to article 12 of the Constitution and of sections 30 and 36 of the City Home Rule Law is the statute governing the city of Yonkers) indicates that " additional rights or extensions in the street or streets in which the said franchise exists," which the common council may grant to the owner or lessee of an existing franchise, may be granted other than by legislative act of the common council. The approval of such extension by the board of estimate and apportionment and also by the mayor of the city (which section 37 required and which was not had) clearly shows such action to be legislative. No authority to the contrary is pointed out. Section 30 of the Second Class Cities Law vests the legislative power of the city in the common council thereof, and section 35 provides that " no ordinance shall be passed by the common council on the same day in which it is introduced, except by unanimous consent." As already pointed out, unanimous consent was not obtained for the resolution in question. The resolution was legislative in purpose, and, however characterized, constituted in legal effect an ordinance. The action of the common council on January 2, 1929, for the reasons stated, was of no effect even if we were to assume, which we cannot, that the authority of the Public Service Commission would not have to be invoked to accomplish the combination of routes.

There is this to be added: It has already been stated that on the hearing before the Public Service Commission of the bus company's application for certificates, the Commission was sedulous to safeguard the plaintiff from ruinous competition and, therefore, limited

the certificates to specific routes with " physical transfer of passengers from one bus to another " where routes intersected, that being the Commission's interpretation of the phrase " combination of routes." Granting that the common council of the city of Yonkers under section 37 of the Second Class Cities Law (*supra*) could extend the franchises so as to include " additional rights," and that these additional rights contemplated " combination of routes " so as to permit of a continuous ride on interchangeable routes without " physical transfer," such a consent could only become effective upon due permission and approval of the Public Service Commission; and upon that proposition the plaintiff here " has a right to be heard." Such is the rule on seeking a certificate of convenience and necessity (*Brooklyn City Railroad Co.* v. *Whalen,* 191 App. Div. 737, 743; affd., 229 N. Y. 570), and the right of hearing obtains equally where it is sought to obtain " additional rights " beyond those approved by the Public Service Commission and the limitations of whose approval were distinctly indicated by findings enunciated to protect another and previously existing transportation company, the plaintiff here.

The appellant receiver challenges the jurisdiction of the Supreme Court of this State over the subject-matter upon the ground that he is a Federal receiver in whose possession the property of the bus company has been lodged, jurisdiction, he claims, being exclusively vested in the Federal court appointing him. Numerous cases in the Federal courts are cited, of which *Murphy* v. *John Hofman Co.* (211 U. S. 562) is typical, it being there said (p. 569): " The court having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession or control of the property. In the courts of the United States this ancillary jurisdiction may be exercised, though it is not authorized by any statute. The jurisdiction in such cases arises out of the possession of the property and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them."

Section 65 of the Judicial Code of the United States provides that a Federal receiver " shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." And section 66 empowers suits against such receivers " in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed." (See 36 U. S. Stat. at Large, 1104, §§ 65, 66; now U. S. Code, tit. 28, §§ 124,

125.)   It was said of those sections by the Supreme Judicial Court of Massachusetts in *Sullivan* v. *Hustis* (237 Mass. 441, 445): " The words of the pertinent sections of the Judicial Code require the receiver of a railroad corporation to conduct its business and operate its system of transportation in conformity to valid State laws upon the same footing, with like responsibility and subject to the same liability to respond to suits which would rest upon the owner if in possession and operating."

The sections of the Judicial Code (*supra*) are discussed by both counsel and their applicability or inapplicability, in the circumstances, has been comprehensively treated.   Independently, however, of those sections, the view I take of the situation is that what the receiver is doing here, and from doing which he has been enjoined, is wholly apart from his lawful obligations as such receiver. The " property " in his custody are the bus lines to be operated by him as defined in the franchise and the certificates of convenience and necessity, and as limited with regard to " combination of routes " as determined by the Public Service Commission in permitting and approving of the routes.   The injunction does not interfere with the " property " which the receiver possesses as trustee.   It goes no further than to enjoin the receiver from doing acts entirely outside of the scope of his receivership and his custody and control of the receivership property.   The receiver has no more right to operate buses on streets for which he has neither the local franchise nor a certificate of convenience and necessity than if he were to go to the city of Albany and attempt bus operation there with neither franchise nor certificate.   The routes upon which the bus company was authorized to operate and the limitation of operation were grants under the laws of this State.   That was all the property that the bus company possessed, in so far as concerns this case, and an extension by the receiver's own volition, in contravention of the grant, would not be and is not the " property " which came into the hands of the receiver.   The receiver, in such circumstances, is not immune from suit in the courts of the State to restrain his illegal acts simply because he is a receiver.   If his position were upheld, the State would be just as powerless to prevent the receiver from the illegal establishment and operation of bus lines where it suited his fancy.   The trust property here is not interfered with.   No money damages are sought.   All that the receiver obtained under his appointment is left unimpaired and unaffected.   No interference with the lawful custody of the receiver is contemplated, nor is there any attempt here to disturb the possession of the Federal court.

There has been filed by the plaintiff a consent to a modification

of the injunction order so as to permit certain operation by the appellants over streets not included in the franchise or certificates during the period of construction work upon certain portions of one of the routes. To the extent thus consented to, the injunction order should be modified, and, as modified, both orders should be affirmed, without costs.

LAZANSKY, P. J., YOUNG, HAGARTY and CARSWELL, JJ., concur.

Order granting temporary injunction modified so as to permit appellants to operate buses temporarily in the streets named in the consent filed by the respondent, and in accordance with such consent, and, as so modified, order granting temporary injunction and order denying motion to modify said injunction order affirmed, without costs. Settle order on notice.