NATHANIEL COOPER *vs.* MOSES ADAMS.

In an action of trespass for breaking and entering a house and close, the defendant, having specified in defence ownership of the house, and a license to enter upon the close, cannot maintain his defence by proof of a conveyance to him, from a tenant at will, of all his estate in the close.

An assignment of his estate by a tenant at will terminates the tenancy.

The Rev. Sts. *c.* 60, § 26, concerning the termination of estates at will, do not apply to cases, in which the tenancy is terminated, according to the principles of the common law, by the consent of both parties.

A house, built and occupied by a reversioner, with the assent of the tenant for life, is not personal, but real estate; and a conveyance thereof by the reversioner will not entitle the grantee to enter and occupy the house against the tenant for life.

THIS was an action of trespass, for breaking and entering the plaintiff's close, dwelling-house, and slaughter-house, in Northbridge; to which the defendant specified in defence, under the general issue, that he owned the house and slaughter-house, and had a license, in law and in fact, to enter upon the close.

It was in evidence, on the trial before *Mellen*, J., in the court of common pleas, that the plaintiff, in 1834, conveyed the premises in question to his sons Ezra and John L. Cooper, who, at the same time, reconveyed the estate to him, for his natural life; that in 1836, the sons, with the knowledge and assent of the father, erected a dwelling-house on the premises, which was occupied, the east half by Ezra, and the west half by John, by themselves or their tenants, from the time of its erection until the insolvency of John in 1847; that in 1846, John, either alone or in connection with Ezra, and with the knowledge and assent of the father, erected a slaughter-house on the premises, and occupied it until his insolvency, on the

10th of June, 1847, and on the 21st, his estate was conveyed by the master in chancery to one Taylor, who had been chosen assignee; that on the 11th of April, 1848, the assignee conveyed to the defendant in the following terms; — "All the right, title, and interest, which was conveyed, assigned, and transferred to me by Henry Chapin, master in chancery, as aforesaid, in and to all the real estate situate in said Northbridge, which belonged to said John L. Cooper, on the 11th of June aforesaid, and all the right, title, and interest, which the said Cooper had, on said eleventh day of June, to and in any real estate situate in the town of Northbridge aforesaid," that after going into insolvency, John moved out of that part of the dwelling-house which he had occupied, and ceased to occupy the slaughter-house ; that this portion of the dwelling-house and the slaughter-house remained unoccupied, until the 1st of September, 1848, when, by a parol agreement of the plaintiff with one Rose, the latter entered and occupied the house about four weeks; that in October, 1848, after Rose left the house, the defendant first went upon the premises and closed the house, and also to the slaughter-house, calling them his own, the plaintiff forbidding him to enter the house ; and that in January, 1849, the defendant let the house to one Parsons, who entered and occupied it for about six months.

The writ contained two counts, one for the entry in October, 1848, and the other for the entry in January, 1849. The defendant contended, that if the house and slaughter-house were erected on the premises, by the sons Ezra and John, by the permission and agreement of the plaintiff, they were as to the plaintiff the personal property of the sons, who had a right, as tenants at will, to use so much of the close as was necessary for the occupation of the house and slaughter-house; and that this right passed by the conveyance to the assignee in insolvency of John, and by the assignee's deed to the defendant, who thereby acquired a right to enter and occupy the same until the tenancy at will was determined. But the presiding judge ruled, that the property in the house and slaughter-house, by the deed of the defendant, was not personal but real estate.

Cooper *v.* Adams.

The defendant then requested the judge to instruct the jury, that if the house and slaughter-house were built upon the land aforesaid by John L. Cooper, by the assent or agreement of the plaintiff, John thereby acquired a right to occupy the same, and the land on which they stood, as a tenant at will; that this right passed to his assignee, and from him to the defend- ant, by the deeds above mentioned; and that the plaintiff could not terminate the tenancy at will, without written notice to the defendant of his intention to do so.

The presiding judge declined to instruct the jury, that any written notice from the plaintiff to the defendant was necessary to terminate the estate at will, but instructed them, that if the premises were vacant, and the plaintiff, with an intention to terminate the tenancy at will, let the house to Rose, as already stated, who entered and occupied it under the plaintiff, and such occupancy was known to the defendant, it was a termi- nation of the tenancy or estate at will of the defendant; and that the defendant thereby ceased to have any right to enter or occupy the buildings, and by a subsequent entry for that purpose, would become a trespasser.

The jury, under these instructions, returned a verdict for the plaintiff, and the defendant excepted.

*E. Washburn*, for the defendant.

*B. F. Thomas*, for the plaintiff.

Wilde, J. This, from the facts reported, appears to the court to be a very clear case. It is an action of trespass, for breaking and entering the plaintiff's close, dwelling-house, and slaughter-house, and the defendant pleaded the general issue, and specified as matter of defence, that he owned the dwelling- house and slaughter-house, and had in law and in fact a license to enter upon the close in the manner he did.

But by the report of the case, it appears, that the dwelling- house and slaughter-house were built by Ezra Cooper and John L. Cooper, the sons of the plaintiff, on the *locus in quo*, with his assent, he having a lease of the same from Ezra and John for and during his natural life; that John afterwards became insolvent, and all his estate was conveyed by a master in chancery to his assignee; and that the defendant's

8 *

only title to the dwelling-house and slaughter-house was by a conveyance to him by the assignee of John's real estate; a title wholly inconsistent with that relied on by the specification; for by that the defendant undertook to justify the entry under a license from the plaintiff and not by virtue of his title as tenant at will. And this variance between the title specified and that proved, we consider as decisive of the case.

It has, however, been elaborately argued by the defendant's counsel, that the houses were personal property, and that the sons had a right, as tenants at will, to occupy so much of the close, as was necessary; that this right passed to John's assignee, and from him to the defendant, and that the plaintiff could not terminate the tenancy at will without a written notice to the defendant of his intention so to do.

But this ground of defence, if it had been duly specified, could not be supported upon the facts proved, for several reasons. In the first place, if the houses were personal property, they did not pass to the defendant by the deed to him of John's real estate; that passed only his title to the reversion in the *locus in quo* after the expiration of the plaintiff's life estate, which would not justify the defendant's entry. In the second place, there is no evidence to prove, that the houses were ever intended to be held as personal property. The sons were owners of the reversion in the land, and the presumption is, that the houses were intended to be held as attached to the real estate. Lastly, if John ever was a tenant at will, that tenancy was terminated on his part, by the conveyance of his real estate by his assignee, and his thereupon moving out of the dwelling-house and ceasing to occupy the slaughter-house; leaving the same unoccupied, until the plaintiff let the house to one Rose, who entered and took possession; and thus the tenancy at will was terminated by the mutual consent of both parties. If, however, it had not been terminated, it would not have passed to the defendant. The estate of a tenant at will is not assignable, but if the tenant makes an actual grant of his estate, that terminates the tenancy. The doctrine is so laid down by lord Coke, and so unquestionably is the law at the present day. "If the tenant at will," says lord Coke,

" granteth over his estate to another, and the grantee entereth, he is a disseizor, and the lessor may have an action of tres-pass against him; for although the grant was void, yet it amounteth to a determination of his will." Co. Lit. 57.

This case, therefore, is not within the Rev. Sts. *c.* 60, § 26, which was made to prevent the inconvenience, which might be suffered by one of the parties, by the sudden determination of the tenancy by the other party, without his assent and against his will; it has therefore no application to a case where the tenancy has been terminated, according to the principles of the common law, by the consent of both parties. So it has been lately decided by this court, in the case of *Creech* v. *Crockett*, 5 Cush. 133. If, however, the tenancy at will had not been terminated, the statute would not apply, for the estate of the tenant at will never passed to the defendant, and he never was tenant at will. It is therefore very clear, that in no view of this case, can the defence be supported.

*Exceptions overruled.*