JEANNIE C. WALL vs. THOMAS C. PLATT & another, receivers.

Norfolk.   November 16, 1896. — November 18, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Loss of Property by Fire from Locomotive Engine — Liability of Receivers — "Railroad Corporation" — Statute — Action — Damages.*

The receivers of a railroad corporation, who are authorized to operate and manage the railroad, are liable to an action under Pub. Sts. c. 112, § 214, providing that "Every railroad corporation . . . shall be responsible in damages to a person . . . whose buildings or other property may be injured by fire communicated by its locomotive engines."

The measure of damages in an action under Pub. Sts. c. 112, § 214, for the loss of buildings and their contents by fire communicated by a locomotive engine, is not the market value in either case, but the real value of the buildings at the time of the fire, ascertained by taking into account the original cost and the cost of replacing them, and making such allowance as depreciation from use, age, and other like causes, and the condition in which they were, require; and the actual worth of the personal property to the owner, ascertained by considering the cost of the articles when new, the length of time they have been used, and their condition at the time of the fire.

TORT, under Pub. Sts. c. 112, § 214, against Thomas C. Platt and Marsden J. Perry, receivers of the New York and New England Railroad Company, to recover for the loss of the plaintiff's buildings and their contents, and other property in Norfolk, by fire communicated by a locomotive engine on May 16, 1894. At the trial in the Superior Court, before *Sheldon*, J., the jury returned a verdict for the plaintiff; and the judge reported the case for the determination of this court.   The facts appear in the opinion.

*F. A. Farnham,* for the defendants.

*R. M. Saltonstall,* (*H. E. Ruggles* with him,) for the plaintiff.

MORTON, J.   This is an action against the defendants as receivers of the New York and New England Railroad Company, to enforce an alleged liability arising under Pub. Sts. c. 112, § 214.

The defendants were appointed by the United States Circuit Court for the District of Massachusetts.   It does not appear that

leave to bring this action has been granted by that court. But there seems to be no doubt that the action can be brought without leave. We understand the defendants to concede that it can. See U. S. St. of March 3, 1887, § 3, 24 U. S. Sts. at Large, 552; U. S. St. of August 13, 1888, §§ 2, 3, 25 U. S. Sts. at Large, 433; *Texas & Pacific Railway* v. *Johnson,* 151 U. S. 81; *Texas & Pacific Railway* v. *Cox,* 145 U. S. 593; *McNulta* v. *Lochridge,* 141 U. S. 327; High, Receivers, § 395 *b*; Beach, Receivers, § 659.

The decree appointing the defendants is not before us; but it is stated in the report that " said receivers under their appointment took possession of the property of the said railroad, and conducted and operated the same up to and including the date of the fire which is the subject matter of this action," and we infer that at the time of the fire the general control, operation, and management of the railroad were in their hands.

The statute under which the action is brought is as follows: " Every railroad corporation and street railway company shall be responsible in damages to a person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, and shall have an insurable interest in the property upon its route for which it may be so held responsible, and may procure insurance thereon in its own behalf."

The ·defendants contend that the statute does not apply to them as receivers, but that the corporation itself is liable; and this contention presents the first question which arises in the case. The argument briefly stated is, that, the liability being wholly statutory, only those parties should be held liable who are expressly mentioned in the statute, and that the statute should not be extended by construction so as to include parties not named in it.

The statute is a remedial one, and is intended to afford protection to those whose property is exposed to risk in consequence of the danger from fire which attends the operation of railroads. *Bassett* v. *Connecticut River Railroad,* 145 Mass. 129. *Daniels* v. *Hart,* 118 Mass. 543. *Ross* v. *Boston & Worcester Railroad,* 6 Allen, 87. *Lyman* v. *Boston & Worcester Railroad,* 4 Cush. 288. *Hart* v. *Western Railroad,* 13 Met. 99. Remedial statutes

are to be construed liberally, and so as to advance the remedy and carry out the object in view in their enactment, and to that end the letter, if necessary, will be restrained or enlarged according as the reason and purpose of the statute require. Cases may come so obviously within the equity of a statute, or within the remedy which it was designed to afford, that it would be unreasonable to suppose that they were not intended by the Legislature to be embraced within it, though the literal sense of the language used may not include them. *Somerset* v. *Dighton*, 12 Mass. 383, 384. *Whitney* v. *Whitney*, 14 Mass. 88, 92. *Brown* v. *Pendergast*, 7 Allen, 427. *Winslow* v. *Kimball*, 25 Maine, 493. Sedg. Stat. & Const. Law, 308. Potter's Dwarris on Statutes, 231.

Though appointed by a court and acting as its officers, the receivers of a railroad corporation, who are authorized to operate and manage a railroad, stand, for the time being, in many important respects, in the place of the corporation itself. They have sole possession of the railroad and of the property belonging to the corporation. They run trains, carry passengers, transport freight, and conduct in the usual manner those active operations for which the railroad was intended and constructed. They act as common carriers by virtue of and under the franchise conferred on the corporation, and as such, so far as the public is concerned, are subject to the same duties and liabilities, in very many if not in all respects, to which the corporation is subject, and which are imposed on it by the exercise of the power conferred by the franchise. *Central Trust Co.* v. *New York City & Northern Railroad*, 110 N. Y. 250, 257. They receive the earnings, and apply them under the direction of the court to the expenses of operating the railroad, to the preservation of the property and franchise, to the payment of the debts, and to other purposes which immediately benefit the corporation, and are such as the corporation itself would apply them to. The property of the corporation is liable for their contracts in the business of operating and managing the railroad, and for their misfeasances and nonfeasances, and those of their servants and agents, as it would be for those of the corporation itself, and for those of the corporation's own managers or servants. *McNulta* v. *Lochridge*, 141 U. S. 327, 331, 332. *Texas & Pacific*

*Railway* v. *Cox,* 145 U. S. 593, 607. *Nichols* v. *Smith,* 115 Mass. 332. *Paige* v. *Smith,* 99 Mass. 395. *Murphy* v. *Holbrook,* 20 Ohio St. 137. Generally speaking, though not always, (see *United States Trust Co.* v. *Wabash Western Railway,* 150 U. S. 287, 299 *et seq.,* and *Quincy, Missouri, & Pacific Railroad* v. *Humphreys,* 145 U. S. 82,) they take the property subject to the performance of the contracts entered into by the corporation, and subject to liens arising from contracts made by it. *Kneeland* v. *American Loan & Trust Co.* 136 U. S. 89, 97. *Williams* v. *Clark,* 140 Mass. 238.

They are not the servants or agents of the corporation, but for some purposes at least their possession may be said to be in a sense its possession, and they succeed for the time being, by virtue of their appointment and authority, to many of its most important powers, privileges, and obligations. The mischief for which the statute is designed to provide a remedy is as incident to the operation of the road in their hands as in those of the corporation. And we cannot think that, by the use of the words " railroad corporation," the Legislature intended to exclude them from liability under the statute in question, but that the words were used in a comprehensive sense sufficiently broad to include parties holding the relation to the corporation which receivers of a railroad corporation usually do.

Cases in this State tend, we think, to support this view. In *Daniels* v. *Hart, ubi supra,* it was held that the statute applied to mortgagees who were in possession of a railroad for the purpose of foreclosure, and who were operating it as such mortgagees. In *Davis* v. *Providence & Worcester Railroad,* 121 Mass. 134, it was held that a lessee in possession, and running trains managed by its own servants and operated by its own locomotives, was liable under the statute for damages caused by a fire communicated by one of the locomotives.

In other States where this or similar questions have arisen, there seems to have been a difference of opinion, but we think that the weight of authority is in favor of the conclusion to which we have come. *Farrell* v. *Union Trust Co.* 77 Mo. 475. *Mikkelson* v. *Truesdale,* 63 Minn. 137. *Rouse* v. *Redinger,* 1 Kans. App. 355. *Rouse* v. *Harry,* 55 Kans. 589. *Hornsby* v. *Eddy,* 56 Fed. Rep. 461. *Rouse* v. *Hornsby,* 67 Fed. Rep. 219. *Central*

*Trust Co.* v. *Wabash, St. Louis, & Pacific Railway*, 26 Fed. Rep. 12. Beach, Receivers, § 383. See, *contra, Henderson* v. *Walker*, 55 Ga. 481; *Turner* v. *Cross*, 83 Tex. 218; *Texas & Pacific Railway* v. *Collins*, 84 Tex. 121.

In some cases in which the corporation was held liable, it was expressly provided by statute that it should be liable, notwithstanding the railroad was in the possession of receivers or others, or the statute gave a right of action against the corporation or any party using or occupying the railroad. *Louisville, New Albany, & Chicago Railroad* v. *Cauble*, 46 Ind. 277. *Ohio & Mississippi Railway* v. *Russell*, 115 Ill. 52. *Ohio & Mississippi Railway* v. *Fitch*, 20 Ind. 498. *McKinney* v. *Ohio & Mississippi Railway*, 22 Ind. 99.

Some of these cases seem to be relied on as authority for the statement in High on Receivers that the possession of the receivers constitutes no defence to an action against the corporation to enforce a statutory liability. High, Receivers, (1st ed.) § 397. It may be that in this State an action would lie against the corporation or the receivers. It is intimated, if not decided, in *Davis* v. *Providence & Worcester Railroad, ubi supra*, that an action would lie against the corporation owning the road, or the lessees. It is not necessary, however, to consider that question now.

We find nothing in other statutory provisions necessarily inconsistent with the result which we have reached. The definition of " railroad corporation " in Pub. Sts. c. 112, § 1, is qualified by the words in the same section, " unless such meaning would be repugnant to the context, or to the manifest intention of the General Court." We do not think that, because in some cases in other sections of the chapter receivers are named in connection with the words " railroad corporation," or because in such connection in some other sections trustees are named and receivers are not, that the argument for their exclusion can be pressed so far as to say that it necessarily follows that, in all other cases in the statute in which duties or liabilities are imposed upon or remedies given against railroad corporations as such, receivers are not to be included because they are not named. Such a construction would relieve receivers from the duties and liabilities contained in numerous statutory provisions

relating to the operation of railroads, designed to protect the public and to promote the safety and welfare of passengers, and from the benefits of which the Legislature hardly could have intended to exclude the public in the case of railroads operated by receivers. Section 169 of Pub. Sts. c. 112 is penal, and c. 173 of St. 1895 well may have been enacted to remove any doubt as to its application to receivers and assignees, and their servants and agents.

The precise scope of the Acts of Congress referred to above does not seem to have been settled by the Supreme Court of the United States, and although it has been considered elsewhere, (see Beach, Receivers, § 659, for a collection of cases,) we do not deem it necessary, in view of the construction which we have given to our own statute, to pass upon the question whether they subject receivers to the same liability in all cases to which the corporation would be subject under the laws of the State where its property is situated.

The remaining questions relate to the measure of damages. The defendants contend that it is the market value. The plaintiff contends that the defendants' liability is that of an insurer. The damages consist, first, of buildings destroyed, or substantially destroyed, by the fire ; secondly, of household furniture, personal effects, and other personal property contained in the buildings and burned up by the fire ; and thirdly, of the injury to and destruction of fences, fruit and shade trees, and sprout and grass land. The case was referred to an auditor, who made two reports, the second being called a supplemental report and the first the report. No evidence was introduced at the trial in the Superior Court on the question of damages except that contained in the two reports of the auditor, " the parties agreeing that the amounts found by the auditor should be taken as findings of fact, subject, however, to the determination of the Supreme Judicial Court of any questions as to the proper measure of damage arising on the face either of the report or the supplemental report." The supplemental report states the amount of damages if the rule of market value is to be applied, and how it was arrived at in the case of the buildings. In the report the auditor states that, in estimating the value of the buildings, he has " taken into consideration the original cost, the depreciation consequent upon

the use to which they had been put, the condition in which they were, and also the cost of replacing them by other buildings of the same character, with a proper allowance for the difference between new buildings and the condition of the buildings in question on the day of the fire," and on that basis he finds the damages to be $5,250. Their fair market value in connection with the land he finds to be $3,250. In determining the amount of damages sustained by the loss of the furniture and other personal property included in the second item, the auditor states that he has "taken into consideration the cost of the articles when new, the length of time they have been used, and the condition they were in at the time of the fire," and on this basis he estimates the damages at $3,187.69. Their market value he finds to be $2,273.31. The report states the facts on which these findings are made. In regard to the buildings, the report, after describing them generally, proceeds as follows: "I find that the buildings were more expensive in character than is customary in the neighborhood in which they were situated, and that at no time could they probably have been sold for a price approximating the original cost of constructing them or the cost of replacing them. The buildings were in reasonably good repair at the time of the fire, and there was little depreciation beyond what would inevitably result from the lapse of time." In regard to the articles included in the second item, the auditor, after stating that the defendant introduced evidence as bearing on the measure of damages to show that second hand household furniture, effects, and other personal property of the kind destroyed was at the time of the fire commonly used in Boston, but that he did not find they were commonly used in the town of Norfolk, continues as follows: "I also find that the price paid for second hand articles is very much less than the price paid for them when new, by reason of the fact that they are second hand, and without reference to whether they have depreciated by use or not; and I find that the difference between the price of household furniture and other personal property destroyed when new, and the price at which it could be sold as second hand articles, is very much greater than any difference in value occasioned by the use to which the articles had been put, or the condition in which they were at the time of the fire," and he adds that, "under the cir-

cumstances," he has "not deemed that the plaintiff is limited to . . . the market value of the household furniture and other personal property as second hand articles."

The object of the statute, as already observed, is to protect those whose property has been injured or destroyed in the manner therein described. *Hart* v. *Western Railroad,* and *Ross* v. *Boston & Worcester Railroad, ubi supra.* For that purpose the statute makes the corporation in effect an insurer, and authorizes it to protect itself by insuring the property for which it may be held responsible along its route. *Rowell* v. *Boston & Maine Railroad,* 57 N. H. 132, 139. *Mathews* v. *St. Louis & San Francisco Railway,* 121 Mo. 298. It is immaterial whether due care is exercised by it to prevent the communication of fire from its locomotives. It is doubtful whether contributory negligence on the part of the owner of the property destroyed would be a defence, unless so gross as to amount to fraud. *Rowell* v. *Boston & Maine Railroad, ubi supra.* The liability is an absolute one, and we think that the rule of damages should correspond to the liability. It is well settled that the principle on which damages are assessed in insurance cases is that of indemnity for the loss actually sustained. *Washington Mills Emery Manuf. Co.* v. *Weymouth & Braintree Ins. Co.* 135 Mass. 503, 505, 506. *Brinley* v. *National Ins. Co.* 11 Met. 195. *Burgess* v. *Alliance Ins. Co.* 10 Allen, 221. *Brady* v. *Northwestern Ins. Co.* 11 Mich. 425. *Illinois Ins. Co.* v. *Andes Ins. Co.* 67 Ill. 362. *Foley* v. *Manufacturers & Builders' Ins. Co.* 152 N. Y. 131, 134.

No general rule can be laid down by which the amount of the indemnity can be arrived at infallibly in all cases. In cases where the subject of insurance consists of commodities which are bought and sold in the market in the ordinary course of trade or dealing, the market value, as in cases of trover, would seem to furnish the best measure of ascertaining what amount will indemnify the insured for his loss. *Beale* v. *Boston,* 166 Mass. 53. *Equitable Ins. Co.* v. *Quinn,* 11 L. C. Rep. 170. *Wehle* v. *Haviland,* 69 N. Y. 448. In such cases market value usually is equivalent to market price, and the sum received by the insured would enable him to replace the goods which he had lost, with others equal to them in every respect, and thus restore him to as good a position as he was in before the fire occurred. But market

value does not in all cases afford a correct measure of indemnity, and is not therefore "a universal test." *Beale* v. *Boston, ubi supra.* In some cases there is no market value, properly speaking, and in others, if there is, it plainly would not of itself afford full indemnity. *Mather* v. *American Express Co.* 138 Mass. 55. *Green* v. *Boston & Lowell Railroad,* 128 Mass. 221. *Starkey* v. *Kelly,* 50 N. Y. 676.

Ordinarily, in determining the market value of buildings, they are valued either for the purpose of removal, or, as was the case here, in connection with the land on which they stand. The first manifestly would not afford just compensation in the present instance. In the second case, the value depends on the location and other considerations entering into the value of the land, and therefore would not necessarily constitute a just criterion of the loss actually sustained by the destruction of the buildings. Sutherland, Damages, § 821. Buildings adapted to the land on which they stand are not bought and sold in the market separate from the land.

We think that the manner in which the auditor arrived at the damages approaches more nearly the correct rule in cases like the present. We understand him to have assessed them according to the real value of the buildings at the time of the fire, and to have ascertained that, by taking into account the original cost, and the cost of replacing them, and making such allowance as depreciation from use, age, and other like causes, and the condition in which they were, required. We think that this was correct. See *Washington Mills Emery Manuf. Co* v. *Weymouth & Braintree Ins. Co.* 135 Mass. 503; *Ætna Ins. Co.* v. *Johnson,* 11 Bush, 587; *State Ins. Co.* v. *Taylor,* 14 Col. 499; *Jacksonville, Tampa, & Key West Railway* v. *Peninsular Land, Transportation, & Manuf. Co.* 27 Fla. 1, 136; *Laurent* v. *Chatham Ins. Co.* 1 Hall, (N. Y.) 41; *Washington Mills Emery Manuf. Co.* v. *Commercial Ins. Co.* 13 Fed. Rep. 646.

We also think that as to the furniture, personal effects, and other personal property, the market value, if there was one, would fail to furnish a satisfactory test of the actual loss. We assume that by "other personal property" is meant property of the same general description as the furniture and personal effects. It is true that the defendant offered testimony tending "to show that

second hand household furniture, effects, and other personal property of the kind destroyed, were, at the time of the fire, commonly sold in Boston." But if we assume that Boston was the nearest place where such articles were bought and sold, and that the market value there would be evidence of the market value at the place of loss, we nevertheless think that a sum equal to the market value would not indemnify the plaintiff for the loss which she has sustained. Such a value would depend largely on considerations which would have nothing to do with the real value of the articles, or with their actual worth to the owner. And we think that, being in the plaintiff's possession and used and kept for use by her in her house and about her person, without any intention or expectation on her part of selling them or of offering them for sale, they should be regarded as belonging in a sense to the person of the owner, and that the damages should be assessed according to the actual worth of the articles to her for use in the condition in which they were at the time of the fire, excluding any fanciful or sentimental considerations. *Beale* v. *Boston, ubi supra,* and cases there cited. *International & Great Northern Railway* v. *Nicholson,* 61 Tex. 550, 553. *Atchison, Topeka, & Sante Fé Railroad* v. *Stanford,* 12 Kans. 354, 380. *Denver, South Park, & Pacific Railroad* v. *Frame,* 6 Col. 382, 385. *Sun Fire Office* v. *Ayerst,* 37 Neb. 184, 192, 193. *International & Great Northern Railway* v. *Searight,* 8 Tex. Civil App. 593. *Starkey* v. *Kelly,* 50 N. Y. 676. *Fairfax* v. *New York Central & Hudson River Railroad,* 73 N. Y. 167. Sedg. Damages, (8th ed.) § 251.

We know of no more satisfactory way of arriving at this than to do as the auditor has done, namely, take the cost of the articles when new, the length of time they have been used, the condition they were in at the time of the fire, and from these facts determine what they were then worth to the owner.

We do not understand that there is any dispute respecting the damages to which the plaintiff is entitled for the injury to and destruction of the grass and sprout land, fruit and shade trees, and fences.

The result is, that we think that the plaintiff is entitled to recover and that judgment should be entered for the sum found due by the auditor in his report, namely, $8,939.69, with interest.

*So ordered.*