Grabau, J.
This is an action of tort, contract and G. L. c. 93A in which the plaintiff by his third amended complaint seeks to recover $5,290.00 for the loss of his personal property which he had placed in a leased storage compartment at defendants’E-Z Mini Storage facility in Lynnfield, Massachusetts on August 27,1979. He also seeks treble damages and attorney’s fees for violation of G. L. c. 93A.
The third amended complaint is in five counts. The first count alleges that the defendants’ negligence caused the loss of plaintiffs property. The fourth count alleges that the defendants breached a contract of bailment. The fifth count alleges that the defendants committed unfair and deceptive acts of practices in violation of G. L. c. 93A in connection with the leasing of storage compartment to the plaintiff. The second and third counts were directed at Gwendolyn and James McCormack who were never served with process.
The defendants admitted that they entered into a written lease with the plaintiff. They denied that they were negligent, that a bailment existed and that they had violated Chapter 93A.
*32 The court found for the plaintiff in the sum of $4,550 under Counts I and V and awarded attorney’s fees of $12,483.75 under Count V. The court also found for the defendants on Counts II, III and IV and for the plaintiff Atwood on the counterclaim.
At the trial, there was evidence tending to show:
The defendants, Charles D. Nolan and William J. Nolan, own and operate a business in Lynnfield, Massachusetts known as E-Z Mini Storage Co. Then-facility consists of seven buildings containing approximately 500 rental storage units. The units vary in size from 5' x 5' to 20' x 30' and each has its own steel roll-up door. There is a chain link fence .on three sides of the facility and there is a gate at the entrance.
The facility is managed by the defendants’ employees who reside in an apartment on the premises. From at least August 27,1979 until April 8,1980, the facility was managed by Gwendolyn and James McCormack. The managers beginning May 1, 1980 were Oral and Helen Nilson.
On August 27,1979, the plaintiff and a friend, Dr. Thomas Horst, went to the E-Z Mini facility. They went to the office where the plaintiff signed the rental lease given to him by James McCormack and paid $54.80 for rent and a “performance and clean-up deposit.” The plaintiff and his friend then placed his goods into the compartment which he had rented. After all his property was in the compartment, the plaintiff closed the door and tried to attach his own lock to the door. The lock did not fit the hasp on the door. The plaintiff and his friend then returned to the office. The plaintiff asked Mr. McCormack for another compartment. Mr. McCormack said that the plaintiffs lock would not fit any of the hasps. The plaintiff said that he would drive to the store to buy a new lock while his friend stayed behind to watch the compartment. McCormack then offered the plaintiff alock that would fit the hasp and two keys. He did not say anything to the plaintiff about the lock and keys except that the lock would fit. McCormack did not request any money for the lock and the plaintiff did not pay anything for it. The plaintiff then placed the lock on his compartment and left the premises. At no time during his first visit to E-Z Mini, or thereafter, did Mr. or Mrs. McCormack warn the plaintiff that he took the lock at his own risk. Nor did Mr. and Mrs. McCormack tell the plaintiff that the lock given him could be opened by a master key or other keys.
The plaintiff entered his compartment again on August 31, 1979 and in November 1979. Everything appeared in order. He did not return to the E-Z Mini facility until May 1980. He did not authorize anyone to open his compartment.
Sometime between November 1979 and the end of March 1980 the plaintiffs goods were removed or stolen from Compartment 211. On March 29, 1980 Gwendolyn McCormack rented Compartment 211 to a new lessee, Charles Randall. Plaintiff was not informed of this until May 1980.
Plaintiff paid his monthly rent in accordance with the provisions of the lease from November 1979 through March 1980. His check for April 1980, dated April 10, was received by the defendants on April 14 and deposited on April 15. His check for May 1980, dated May 8, was returned to him uncashed. Helen Nilson wrote to the plaintiff on May 12, 1980. Following receipt of this letter, the plaintiff had a conversation with Mrs. Nilson in which he told her that he had not moved from his compartment. She told him that she would try to *33 straighten out the records which were “a mess” when she started her job.
On May 30,1980 the plaintiff went to Compartment 211 to remove some of his belongings. When he found that his key would not open the lock on Compartment 211, he went to the office. He spoke to Mrs. Nilson who told him that the compartment had been rented to someone else on April 1. Plaintiff then reported his loss to the Lynnfield Police. The plaintiff testified that all the missing items of his personal property were used. The missing items including date of purchase, purchase price and value at time of loss as testified to by the plaintiff are as follows:
Description Date of Purchase Plaintiffs Purchase Price testimony on value as of late March 1980
$980 $880 7/75 1 Pioneer AM/Fm stereo receiver, SX 350
2 Sony 3-way stereo speakers
1 Sony automatic stereo turntable
$500 $500 1/78 1 Teac stereo cassette deck
$20 $ 20 8/77 1 Discwasher record cleaning system
7/75-8/79 60 record albums DO £»■ O CO O
3/77 1 Brick/rust velour loveseat 4^ CT O 4^ Ü1 O
$250 $250 3/77 1 Brick/rust velour club chair
$180 1 42" butcher block oak dinner table o 00 00 C'-
$180 2 Breuer dining armchairs o 00 00
4/78 $150 $150 1 Teak Scandinavian desk
4/78 $ 80 $ 80 1 Teak Scandinavian desk chair
4/78 $150 $150 1 50" Teak Scandinavian dresser
6/74 $100 $100 1 Black Samsonite suitcase 1 suiter
1/77 $150 $150 1 Harbormaster double breaster khaki, wool-lined
7/75 '$225 $225 1 3-piece suit, Yves St. Laurent, Brown
*34 $140 $150 5/77 1 3-piece suit, Saks Fifth Avenue, Brown & White pin-stripe
$100 $100 8/77-3/79 2'pr. Brown shoes, both Florsheim
$ 50 8/77-3/79 1 pr. Red-brown shoes, Florsheim ' «a cn O
$120 8/77-3/79 6 Dress and casual shirts (avg. price $20.00) se-cn o
2/77 1 set Bed linen, gold ^a-co cn co cn
various 8 Hard-back novels and non-fiction (avg. price $11.25) co O & co o
various $ 75 25 paperback novels and non-fiction (avg. price $3.00) ea-co cn
10/70-9/78 $400 $400 20 College text books (avg. price $20.00)
12/78 $ 60 $ 60 1 print, contemporary water color, chrome frame
2/77 1 4-place setting of dinnerware smoke br. O o 1C
2/77 1 8-place setting of stainless flatware o o
2/77 1 set of cooking ware: pots, pans, etc. brown © o o CO
12/77 1 Thermos, brushed stainless steel CO o CO o
10/78 1 Wok CO o CO o
2/77 1 Miscellaneous cooking utensils CO cn CO cn
$140 $140 3/77 1 Vacuum cleaner, Hoover “Celebrity” Model Red with power beater brush
$180 $180 9/74 1 pr. Fischer Skis, “C-4” model, red, white and blue; and bindings
1 pr. ski poles co cn CO Cn 4^
1 pr. ski boots “Cabei ” brand size 12-1/2, blue cn O cn © 4^
12/78 $ 40 $40 $5,475 $5,245 1 Soccer ball, Spaulding
A Lynnfield police officer David Mayerson testified as follows:
On March 23,1980, he visited the E-Z Mini facility to investigate an alleged *35 theft from Compartment 218. James McCormack told him that he had given out locks for approximately 90 compartments and that each lock could be opened by the same key. The officer also said that the Lynnfield Police had received about 30 reports of property loss at E-Z Mini.
Oral Nilson testified (by deposition transcript) as follows:
He and his wife began working as managers at the E-Z Mini facility on May 1, 1980. He had no personal knowledge of anything that James McCormack did while manager. During the first two weeks of May, he inspected the locks that were on the compartments. Approximately twenty locks belonging to E-Z Mini were in place on leased compartments. They had been given out before he began working. They were of the same make. The manager’s master key would open these locks. The set of keys which went with a particular lock would not fit another lock. Some of these locks came with extra keys. Mr. Nilson sent a memorandum dated May 31,1980 to Charles Nolan.
An expert in used stereo equipment testified that the plaintiffs stereo equipment (receiver, speakers, turntable and cassette deck) had a maximum resale value of one-half the purchase price.
The plaintiffs attorney submitted an affidavit in support of his request for attorney’s fees under G. L. c. 93A.
The defendant seasonably filed requests for rulings of law which with the court’s rulings thereon are as follows:
1. If property sought to be bailed is not delivered to the bailee or is not accepted by the bailee, there can be no bailment.
Granted.
2. There was no request #2.
3. There can be no bailment as to goods of which the bailee has no knowledge or notice.
Granted.
4. There can be no bailment as to stored goods where the owner retains the right to remove them at will without the knowledge of the alleged bailee.
Granted.
5. The contract between the plaintiff and the defendants created the relationship of landlord and tenant.
Granted.
6. The plaintiff is bound by the terms of the contract regardless of whether he read it or understood it.
.Granted, except that neither party is bound by those terms that are void, against public policy, and unlawful.
7. The mere disappearance of the plaintiffs property does not establish negligence on the part of the defendants.
Granted, but the evidence of negligence here included more than the “mere disappearance of the plaintiffs property.”
See my findings.
8. 940 C. M. R. 3.17(3) applies only to agreements for the use and occupancy of a dwelling unit.
Granted.
9. Since the plaintiff failed to send his written demand for relief (Exhibits C-l and C-2 to the third amended complaint) at least 30 days prior to the filing of the Third Amended Complaint, he may not *36 recover under G. L. c. 93A, § 9 for any unfair or deceptive act or practice described therein which was not described in his first written demand (Exhibits B-l and B-2).
Denied, where I find that these defendants were put on notice as a consequence of the litigation in this matter which preceded the filing of the Third Amended Complaint, and of the Demand letter of February 4,1981, as to the identity of the plaintiff, the nature of the unfair or deceptive acts or practices he was relying on, and the injuries he claimed to have suffered.
10. If certain provisions of the defendants’ lease constitute an unfair or deceptive act or practice, the plaintiffs damages are only those which are causally connected to the unfair act or practice.
Granted.•
11. If the relief tendered by the defendants was reasonable in relation to the injury actually suffered (excluding attorney’s fee) plaintiffs recover under G. L. c. 93A is limited to the amount tendered.
Granted, as a correct statement of law, but here I find that the relief tendered was not reasonable in relation to the injury actually suffered by plaintiff.
12. If the defendants violated G. L. c. 93A, § 2, plaintiff is entitled only to those attorney’s fees incurred in connection with proving said violation.
Granted.
13. An award of attorney’s fees under G. L. c. 93A is based on the objective worth of the services considering such factors as (1) how long the trial lasted, (2) the difficulty of the legal and factual issues involved and (3) the degree of competency demonstrated by the attorney.
Granted, but see also Homsi v. C.H. Babb Co., Inc., Mass. App. Ct. Adv. Sh. (1978) 1679.
14. The measure of damages for plaintiffs personal effects. (i.e. clothing, kitchen utensils, books) is the cost of the articles when new less depreciation in light of their age, usé and condition at the time of loss.
Granted.
15. The measure of damages for plaintiffs stereophonic equipment is the fair market value at the time of loss.
Granted.
16. The relationship of landlord and tenant did not impose on the defendants any duty to protect the plaintiffs property from thieves. Granted, but defendants were under a duty to warn plaintiff of the increased risk of theft due to the use of the double lock system.
17. A person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting in his behalf.
Granted as a correct statement of law, but a landlord may not exonerate or indemnify himself from liability on account of his, or his agents,’ negligence. Chapter 186, § 15. ' •
18. G. L. c. 186, § 15 applies to residential leases but not to *37 commerical leases for storage space as existed between the plaintiff and the defendants.
Denied.
19. The evidence requires a finding for the defendants.
Denied.
20. The evidence does not warrant a finding that a bailment existed between plaintiff and the defendants.
Granted.
21.Theevidencedoesnot warrant a finding that the defendants were negligent.
Denied.
22. The evidence does not warrant a finding that the defendants committed an unfair or deceptive act or practice in violation of G. L. c. 93A § 2.
Denied.
23. The evidence does not warrant a finding that any violation of G. L. c. 93A, § 2 by the defendants was willful or knowing.
Denied, the evidence would warrant such a finding, but it does not require it, and I find the defendants’ conduct here was not willful or knowing with the meaning of Chapter 93A, § 9(3).
The court, at the request of the plaintiff, made the following rulings: 1. The Plaintiff is a “person” for the purpose of G.L.c. 93A, §1, et seq. Granted.
2. The Defendants are “persons” for the purpose of G.L.c. 93A, § 1 et seq.
Granted.
3. In the period August 27, 1979 to May 31, 1980, the Defendants Charles D. Nolan and William J. Nolan owned and operated a facility in Lynnfield, Massachusetts known as the E-Z Mini Storage or E-Z Mini Self-Storage Company (“E-Z Mini facility”).
Granted.
4. In the period August 27, 1979 to April 15, 1980, the Defendants Charles D. Nolan and William J. Nolan employed the Defendant James McCormack as resident manager of the E-Z Mini facility and gave actual authority to the Defendant James-McCormack to sign ■ "Rental Leases” for compartments located on the premises.
Granted.
5. In the period August 27, 1979 to April 15, 1980, the Defendants Charles D. Nolan- and William J. Nolan employed the Defendant James McCormack and gave actual authority to the Defendant James McCormack to manage and operate the business of the E-Z ' Mini facility.
Granted.
6. In the period August 27, 1979 to April 15, 1980, the Defendant James McCormack had apparent, as well as actual, authority to sign “Rental Leases” for the compartments and otherwise to manage and operate the E-Z Mini facility.
Granted.
7. The “Rental Lease” at issue in this case-is a “Rental Agreement” for *38 the purpose of 940 CMR 3.17(3).
Denied, where I find the rental lease here did not cover a “dwelling unit.”
8. The use by the Defendants of the “Rental Lease” signed by the Defendants was an unfair and deceptive act in trade or practice in violation of 940 CMR 3.17(3)(b)(l) and (b)(2) and G. L. c. 93, § 2 because:
(a) The lease failed to notify the Plaintiff of the “names, addresses and telephone numbers of the owner, and any other person who is responsible for the care, maintenance and repair of the property,” 940 CMR 3.17 (3)(b)(1); and
(b) The lease failed to notify the Plaintiff of the “name, address and telephone number of the person authorized to receive notices of violations of law and to accept service of process on behalf of the owner,” 940 CMR 3.17 (3)(b)(2).
Denied, I find no violation of 940 CMR 3.17 (3)(b)(1) and (b) (2) where I find the leased property was not a dwelling unit.
9. The provisions of G. L. c. 186, § 15 apply to rental leases for non-residential property.
Granted.
10. The “Hold Harmless Agreement” and indemnification provisions of the “Rental Lease” used by the Defendants are against public policy and void and violate G. L. c. 186, § 15.
Granted. ■
11. The use of the “Rental Lease” here, containing a “Hold Harmless Agreement” with indemnification provisions, is a violation of 940 CMR 3.16 (3) and 940 CMR 3.17 (3) (a) and G. L. c. 93, § 2.
Granted in part, denied in part. The “Hold Harmless” clause in the parties’ lease is a violation of 940 CMR 3.17 (3)(a) and G. L. ch. 93, [sic], sec. 2.940 CMR 3.17 (3)(a) is inapplicable because the unit here is not a dwelling unit.[2]
12. The donation to .-the Plaintiff of a lock for his compartment, without informing the Plaintiff that other keys in the. possession of the managers and/or other persons, could open the lock,' was an unfair and deceptive trade practice, in violation of 940 CMR 3.1.6 (2) and G. L. c. 93A, § 2. ■ .
Granted.
13. The rental of Compartment-No. 211 in the E-Z Mini facility to Charles Randall under, a rental lease agreement dated -March 29,<-1980.at a time when the Plaintiff had paid rent fpr the compartment and was current in his rent was a-n unfair ;and deceptive trad.e. practice in violation of G. L. c. 93A, § 2, as well as a willful breach,of the “Rental Lease” between the Plaintiff and the Defendant. . Granted. - . .
*39 14. The Plaintiff and the Defendant entered into a contract for the bailment of the Plaintiffs goods.
Denied, I find no bailment was created here.
15. The receipt of bailed chatties by a defendant and their disappearance, will permit a finding that the Defendant was negligent. Granted as a correct statement of law, but inapplicable in view of my conclusion of law here.
16. The failure of the Defendants, their agents, servants and employees to inform the Plaintiff that other keys, in possession of the Defendants’ agents, servants, employees and/or other persons, could open the lock sold by the Defendants to the Plaintiff was negligent.
Granted.
17. The acts of the Defendants, their agents, servants and employees, in renting the Plaintiffs Compartment No. 211 to another when the Plaintiffs rent was current, in accepting rent from the Plaintiff for Compartment No. 211 while it was being rented to another, and in failing to inform the Plaintiff until May, 1980 that his compartment was being so rented to another constituted negligence on the part of the Defendants.
Granted.
18. The Defendants, as owners and operators of the E-Z Mini facility in the period August 27,1980 to May 30,1980, are responsible and liable for the wrongful and negligent acts of their agents, servants and employees which caused Plaintiff damage.
Granted.
19. The measure of Plaintiffs damages is the value of the Plaintiff’s goods which were placed under the Defendants’ care at the time of the execution of the “Rental Lease.”
Granted.
20. The owner of goods which are lost or stolen may testify as to the value of the goods.
Granted.
21. An element of uncertainty is permissible in estimating damages and the award of damages is permissible on meager evidence, in particular in business torts where the focus is on the wrongfulness of the Defendants’ conduct.
Granted.
22. The tender of settlement by the Defendants in this case was not reasonable in relation to the damages proved.
Granted.
23. A plaintiff is entitled by the provisions of G. L. c. 93A, § 9 to an award of no less than two and no more than three times actual damages if the court finds that the use or employment of.the unfair or deceptive act or practice was a willful or knowing violation of G. L. C. 93A, § 2 or that the refusal to grant relief was made in bad faith with knowledge or reason to know that the act or practice complained violated G. L. c. 93A, § 2.
Granted as a correct statement of law, but I find the unfair act here was not a willful or knowing violation of 93 A, Sec. 2.1 further find the refusal to grant relief was not in bad faith.
24. Upon proof by the Plaintiff in this action of a violation of G. L. c. *40 93A, § 2 and the Attorney General’s regulations promulgated thereunder, the Plaintiff is entitled to an award of reasonable attorney’s fees and costs incurred in connection with the action.
Granted.
25. The Plaintiff here is entitled to an award of attorney’s fees for the defense against the counterclaim of the Defendants, as the counterclaim is based on a provision of the “Rental Lease” which is against public policy, void and violative of G. L. c. 93A, § 2, 940 CMR 3.17 (3) and G. L. c. 186 § 15.
Granted in part, denied in part. See my ruling No. 11.
The court found the following facts:
Subsidiaiy Findings of Fact
Brian Atwood, presently a resident of California, was a student at the Harvard Business School during the academic year, September 1979 to May 1980. On August 27,1979, accompanied by one Thomas Horst, a friend and colleague, Atwood went to E-Z Mini, a ‘self-service’ storage lot, for the purpose of leasing a storage compartment.
E-Z Mini is located in Lynnfield off of Route 1. The facility consists of seven buildings housing 500 rental units. These units vary in size from 5' x 5' to 20' x 30'. A building facing the entrance of the facility housing a resident manager’s office and living space for the on-premises managers. A chain link fence is situated along the front of the premises, and the entrance is secured by a fence gate.
E-Z Mini was managed and controlled, during the period in question, by persons hired by the defendants — typically a semiretired married couple — who resided on the premises. James and Gwendolyn McCormack were the managers on August 27.
When Atwood arrived at E-Z Mini on- August 27, he spoke with James McCormack in the manager’s office, who rented Compartment No. 211 to him at the rate of $21.00 a month. Atwood paid McCormack $54.80, which included the rent for two months and five days and $10.00 for ‘performance and clean-up deposit.’ McCormack and Atwood executed a rental lease for Compartment 211.
With Horst’s assistance, the plaintiff unpacked his goods and placed them into Compartment 211. Atwood then sought to place a heavy-duty padlock which he had brought with him on the compartment door. He was not able to get the arm of the lock over the hasp on the door, however. Atwood and Horst went back to the manager’s office, and there, in McCormack’s presence, they discussed the difficulty they faced with the lock. Atwood asked McCormack for another compartment, but McCormack told him the hasps on all the compartments at the facility were too small for his lock. McCormack then offered Atwood a padlock and two keys for it that would fit the door on Compartment 211. Atwood accepted the lock and keys, secured his compartment with it, and left the premises.
On August 31; Atwood returned to his compartment to store some additional boxes, and found everything in order. In November, he again visited his Compartment and found nothing amiss. He did not return again to E-Z Mini until May 1980, and he did not authorize any other person to open his compartment during that time. Atwood *41 paid his rent monthly in accordance with the provisions of the lease, from November through May except that in April, his check, dated April 10, was not received until April 14, and was deposited on April 15, and his check for the May rental, dated May 8 was returned to him by E-Z Mini uncashed.
Sometime between November 1979 and the end of March 1980, all of Atwood’s goods were either lost or stolen from Compartment 211. On March 29, 1980, Gwendolyn McCormack as manager, rented Compartment 211 to a new lessee, one Charles Randall. The plaintiff did not learn of these events until late in May.
On May 1,1980, Helen B. and Oral P. Nilson began employment as managers of E-Z Mini, replacing the McCormacks. Their duties included the rental and cleaning of compartments, maintenance of E-Z Mini’s records, and security of the premises. During the first ten days on the job, Mrs. Nilson noticed that the checks of both Mr. Atwood and Mr. Randall had been accepted for April for Compartment 211. On May 12,1980, she wrote Atwood that ‘Our record card shows you moved out of Unit 211 on March 1,1980. We have received a check for $21.00 written on May 8,1980. Please contact me ... so we can straighten this out. I’ll hold the check.’ After he received this letter, Atwood telephoned Mrs. Nilson and told her that he had not moved from Compartment 211, nor received any notice from E-Z Mini that it had been rented to another lessee. Nilson told Atwood that she would attempt to straighten out the records which, she said, she found in ‘a mess’ when she started the job.
In late May, Atwood visited E-Z Mini for the purpose of withdrawing some of his belongings from storage.. He went directly to his compartment, but when he found his key would' not open the lock on Compartment 211, he proceeded to the manager’s office. There he spoke with Mrs. Nilson. She told him that her records showed that on April 1, Compartment 211 had been rented to someone else. Atwood then reported his loss to the Lynnfield Police Department. Mrs. Nilson subsequently returned to Mr. Atwood his May check, with the note that ‘I was holding [your check] due to the confusion re. Unit 211. Your April check was entered by previous manager on duty.’
Police Officer David Mayerson of the Lynnfield Police Department testified that on March 23,1980, he visited E-Z Mini to investigate an alleged theft from Compartment 218. In the course of this investigation he spoke with the then manager, James McCormack. He told Mayerson that he had distributed locks on a‘loan basis’ for 90 storage compartments, each of which could be opened by the same key. McCormack further told Mayerson that he had cautioned those who used the common locks that they did so at ‘[their] own risk.’ The Lynnfield Police Department had, around the time of Mayerson’s investigation of the loss from Compartment 218, received about 30 reports of property loss at E-Z Mini.
E-Z Mini employed a ‘double lock’ system to collect overdue rent. As described by Mrs. Nilson, under this system, the manager would placé a lock belonging to the facility on an overdue compartment, thereby ‘ preventing the lessee from removinghis goods until the rent was paid up. No such double lock was placed on Atwood’s compartment at any time by anyone at E-Z Mini
*42 I find the lock and key James McCormack gave Atwood on August 27, 1979 was part of a common lock and key system, giving other lessees who possessed similar keys access to Atwood’s compartment. Neither Mr. nor Mrs. McCormack ever told Atwood that the lock given him was part of such a common system, or warned him that he took, that lock at his own risk.
Damages
The plaintiff testified that the value of his stored goods was $5,290.00, and an interrogatory answer of the plaintiff detailing his loss was introduced in evidence. One Harvey Soolman, an expert in used stereo equipment also testified as to the values of a stereo receiver, speakers, turntable, and stereo cassette deck — items of the plaintiffs lost property. Soolman placed the maximum resale value on this property at one-half the purchase price. On the basis of all the testimony as to damages, I place the total value on plaintiffs stored goods at the time of the loss at $4,550.00.
Conclusions of Fact and Law
1.1 find there was no bailment created between these parties. I find for the defendants on Counts II, III and IV of the plaintiffs Third Amended Complaint.
2. I find that the defendants’ agents, James and Gwendolyn Mc-Cormack breached a duty owed to the plaintiff as lessee to use due care in the operation of the E-Z Mini facility. James McCormack was negligent in that (a) he employed a common lock system which gave persons unauthorized by the plaintiff access to his leased space and the goods stored therein; (b) he failed to inform the plaintiff that the lock which he provided for his use could be opened by other lessees who were part of the common lock system. James and Gwendolyn McCormack were negligent in that (a) they rented plaintiffs compartment to another tenant during the term of plaintiffs lease; (b) they failed to keep an accurate record of transactions pertaining to the plaintiffs tenancy; and (c) they failed to notify the plaintiff that his goods had been either lost or stolen and that his tenancy had been terminated.
3.1 impute the negligence of James and Gwendolyn McCormack to their principals, the defendants here.
4. I find the negligence of the defendants’ agents, James and Gwendolyn McCormack, was the proximate cause of the plaintiff’s loss.
5.1 find for the plaintiff on Count I of his Third Amended Complaint in the amount of $4,550.00.
6. I find the actions of the defendants constituted unfair and deceptive acts and practices within the meaning of G. L. c. 93A, § 2a. Specifically, I find:
(a) The use of the common lock system and the failure to inform the plaintiff of it upon offering him a lock violates c. 93A, § 2a;
(b) the rental of plaintiffs unit to another tenant during the terms of plaintiffs lease, and while accepting rent from the plaintiff, violates c. *43 93A, § 2a;
(c) the use of the ‘Hold Harmless Agreement’ and the ‘Theft’ liability waiver clause in the Rental Lease Agreement violate c. 186, § 15 and G. L. c. 93a, § 2a.
7.1 find the negligent and unfair conduct of the defendants here was not willful or knowing within the meaning of c. 93A, § 9(3).
8.1 find that the defendants’ refusal to grant relief upon demand was not in bad faith.
9.1 find for the plaintiff on Count V of his Third Amended Complaint in the amount of $4,550.00, plus attorneys’ fees.
10.1 find for the plaintiff on the defendants’ counterclaim.
Attorneys’ Fees
Plaintiff has requested an award of attorneys’fees pursuant to G. L. c. 93A, § 11 and, through his attorney, he has presented an affidavit detailing these fees. While the amount of damages in dispute was not large, this case was factually complicated and it presented difficult and complex issues of law. Counsel for both parties litigated these issues aggressively, expertly, and extremely thoroughly. I am satisfied on the ample evidence presently before me, including the affidavit of his counsel, that the plaintiff is entitled to be awarded his fees. I deny, therefore, the defendants’ motions to conduct discovery and for a further evidentiary hearing. Should the defendants wish to submit a counter-affidavit relative to the attorneys’ fees award, such may be submitted up to and including January 3, 1983. The court has scheduled a hearing to be held on January 3, 1983 at 10:00 a.m., at which time further argument may be had as to the amount of attorneys’ fees award.
Following entry of judgment on January 3, 1983, the defendants filed a motion to amend the findings. The defendants filed a timely request for report on the denial of said motion.
The report states that it contains all the evidence material to the question reported.
The defendants claiming to be aggrieved by: (1) the court’s ruling on defendants’ requests 7, 9, 11, 13, 16, 19, 21 and 22; (2) the court’s rulings on plaintiffs requests 11,12,13,16, 17 and 22; (3) the overruling of the objection to the question of what James McCormack said to Officer Mayerson and (4) the denial of the motion to amend the findings and the plaintiff claiming to be aggrieved (a) by the exclusion of Exhibits L, M, and N and (b) by the court’s ruling on the plaintiffs request No. 23.
We first consider defendants’ claim for report with respect to the trial court’s admission of the testimony presented by Officer Mayerson concerning the out-of court statement which Mr. McCormack made to him on March 23, 1980, while the officer was investigating a separate complaint. The trial court allowed the officer to testify that Mr. McCormack had told him that he had distributed locks on a loan basis for approximately 90 storage compartments, that each of these compartments could be opened by the same key, and that Mr. McCormack had warned the individuals who used these locks that they did so at their own risk.[3] The court overruled the defendants’ objection to the question put to Officer Mayerson concerning his conversation with Mr. McCormack and denied defendants’ motion to strike the answer. The *44 defendants subsequently filed a request for a report on the trial court’s evidentiary rulings. The defendants assert that the McCormack statements are inadmissible hearsay because there was no evidence that he had actual authority to make admissions against the defendant owners. They also claim that the statements were irrelevant and immaterial to the instant case. Plaintiff on the other hand asserts the McCormack statements are admissable against Mr. McCormack as admissions of his own negligence and also as vicarious admissions against the defendant owners. It goes without saying that plaintiff considers these statememts to be highly material. We conclude that the McCormack statements to Officer Mayerson were inadmissible and that their inclusion by the trial judge constitutes prejudicial error. We also note that although it appears from the trial judge’s findings that she included plaintiff within the group of 90 lock users, it does not appear from the record that Mr. McCormack specifically identified the plaintiff as falling within this group to Officer Mayerson or anyone else.
Plaintiff conceded in its brief that under the traditional rule in this Commonwealth, an employee-agent’s statements are not admissible to create liability against his master-principal unless the proponent establishes the employee was authorized to speak for his company employer. There is ample Massachustts case law in which this rule has been applied. The central issue in these cases is not whether a manager is authorized to manage the business premises of his company employer, but rather whether he is authorized to speak for the company and make admissions that would create liability against it.
The Supreme Judicial Court has upheld the exclusion of a store manager’s statements to the plaintiff that he had informed his company that hooks used to display store merchandise were unsafe, dangerous, and should be removed. The Court based its rulings on plaintiffs failure to show that the manager was authorized to make such statements on behalf of his company. Simonok v. Stop & Stop, 376 Mass. 929 (1978). Similarly, the Supreme Judicial Court held in a negligence action that it was prejudiced error to allow plaintiffs treasurer to testify to a conversation he had with the manager of the defending lighting plant commission in which the plant manager had stated concerning an explosion of plaintiffs premises, “Don’t worry about it. . . It’sourfault. . . You will be taken care of.” Bristol Wholesale Grocery Co., Inc. v. Municipal Lighting Plant Comm. of Taunton, 347 Mass. 668, 671 (1964) — The Court ruled that “the mere fact that the plant manager was the manager of defendant’s plant does not of itself give him authority to admit liability.” Id at p. 671. See also Sargent’s Case, 347 Mass. 250 (1964) upholding the exclusion of a letter written by the defendant’s insurer’s employee concerning the insurer’s obligation to pay Worker’s Compensation benefits to the plaintiff-claimant. In a similar vein, the Appeals Court has upheld the exclusion of a police officer’s proposed testimony to the effect that plaintiffs car manager had told him a robbery on plaintiffs business premises had been deliberately staged to collect insurance. In-Towne Restaurant Corporation v. Aetna Casualty & Surety Co., *45 9 Mass. App. Ct. 534, 542 (1980).
The cases which have allowed an employee-agent’s out-of-court statements to be introduced in evidence have turned on the presence of one or more of the following factors: (1) statements made by a corporate officer, Thompson v. Beliauskas, 341 Mass. 95, 96, 97 (1960); Rosenston v. Bickford Shoes, Inc., 340 Mass. 769 (1960); (2) a failure to timely and properly object, make an exception, or claim a report Thompson v. Beliauskas, 341 Mass. 95, 97, 98 (1960) and Ferrara v. Goldberg, 49 Mass. App. Dec. 64, 69, 70, 71 (1972). See also Boylston-Washington, Inc. v. Alcoholic Beverages Control Comm., 8 Mass. App. Ct. 396 (1979); and (3) the state statute exempting administrative agencies from observing the rules of evidence observed by courts. M.G.L.c. 30A, §11(2); Boylston-Washington, Inc. v. Alcoholic Beverages Control Comm., 8 Mass. App. Ct. 396 (1979). None of these factors are present in the instant case. Since plaintiff places particular emphasis on the Thompson case, it should be noted that although the court held in that case that the corporate officers statments were “obviously admissiable against her as an admission,” it only ruled that those same statements were admissible against the defendant corporation because that corporation had failed to properly object or save an exception to the admissibility of these statements.
The defendants claim to be aggrieved by the Trial Court’s ruling on request #21. The denial of Request #21 by the trialjudge involved a ruling, as a matter of law, that there was evidence to warrant recovery by the plaintiff.
Having decided that the hearsay statements of Mr. McCormack, manager of E-Z Mini, were inadmissible, we are obligated to determine if there was other evidence reported to support the judge’s ruling. We have examined the remainder of the judge’s findings and reported evidence and conclude that the plaintiff did not meet his burden of proof by the fair preponderance of the evidence. Therefore, request #21 should have been allowed as a matter of law.
We proceed to discuss the issues of damages. The trial judge correctly granted the defendant’s request for a ruling that “the measure of damages for plaintiffs personal effects is the cost of the articles when new less depreciation in light of their age, use and condition at the time of loss.” The defendant argues persuasively that the judge did not properly apply the correct measure in awarding damages.
The leading case in the Commonwealth dealing with the mesaure of damages for loss of personal property is Wall v. Platt, 169 Mass. 398 (1897). The Supreme Judicial Court decided that a trial judge must consider— "... the cost of the articles when new, the length of time they have been used, the condition they were in at the time of [loss], and from these facts determine what they were then worthy to the owner.” Id. at 407. See also, Employer’s Fire Ins. Co. v. United Parcel Service of Cincinnati, Inc., 99 N.E. 2d 794 (1950): Goldman Omaha Estates, 139 N.Y. Supp. 2d 854, 858 (1955); Proof of Facts, Vol. 3, pp. 559-569.
An award of damages must not be disturbed by an appellate tribunal “unless to make it or to permit it to stand was an abuse of discretion . . .amounting to an error of law.” [citations omitted]. Bartley v. Philips, 317 Mass. 35, 43 (1944). An abuse of discretion consists of judicial action “that no conscientious judge, acting intelligently, could honestly have taken.” [citations omitted ] Id at 44. Markham v. Issner, 57 Mass. App. Dec. 30, 32 (1975). The standard we must apply, therefor, upon reviewing the decision of the trialjudge is to determine whether there was an abuse of discretion amounting to an error of law. [citations ommitted] Id at 44.
*46 The subsidiary facts as found by the trial judge indicate that the plaintiff offered a description of the property he lost, the date of purchase, the purchase price and his opinion as to the value of the items as of late March 1980. The items he lost included used clothing, furniture, cooking utensils and books. An expert in used stereo equipment testified that the maximum resale values of the stereo receiver, speakers, turntable and stereo cassette deck was one half the purchase price. No testimony was offered by the plaintiff regarding the condition of the personal items at the time they were placed in storage. Wall v. Platt, supra at 407. The judge found for the plaintiff in the amount of $4,550.00. This amount was only $695.00 less than what the plaintiff placed as values for his lost goods. The award represents 87% of the value assigned by the plaintiff. It is our ruling that the award of $4,550.00 was an abuse of discretion amounting to an error of law.
Judgment for the plaintiff vacated.
New trial ordered.

The Ruling entered by the Court contains a typographical error. The Ruling should read that the “Hold Harmless” clause in the parties' lease is a violation of 940 C.M.R. 3.16(3) and G.Le 93A. §2.

On page 7 of the trialjudge’s report, there is mention of a memorandum dated May 31,1980 which was sent by the new manager, Mr. Nilson, to defendant Charles Nolan and is marked Exhibit 1. Since the trial judge made no specific findings concerning this memorandum’s contents nor the weight to be accorded its contents, it would be improper for us to speculate as to what, if any, evidentiary value, the trial judge placed on the memorandum in reaching her findings.